IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

SANDRA D. STARGEL, SELETHIA
PRUITT, and all others similarly situat-
ed,

                Plaintiffs,

  vs.

SUNTRUST BANKS, INC., et al..

                Defendants.

**PLAINTIFFS' BRIEF IN OPPOSI-
TION TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED
COMPLAINT**


Case No. 1:12-cv-03822-ODE

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     PLAINTIFFS' CLAIMS AND FACTUAL BACKGROUND ......................2

III.    PROCEDURAL HISTORY ...........................................................6

IV.     ARGUMENT...........................................................................8

    A.    ERISA Legal Background.....................................................8

        1.  ERISA and the Duties of ERISA Fiduciaries ...................................8

        2.  ERISA's Statute of Limitations ..................................... 10

    B.    Plaintiffs' Three Non-Derivative Fiduciary Breach Claims (Counts I-II & Claim against RidgeWorth) are Timely...................................11

        1.    The Non-derivative Fiduciary Breach Claims Satisfy ERISA's Six-Year Limitations Period.......................................12

        2.    The Non-Derivative Fiduciary Breach Claims are Timely under ERISA's Three-Year Period ...........................................16

            a.    Legal Background of ERISA's Actual Knowledge Provision ........................................................16

            b.    This Court Has Already Rejected Defendants' Illogical Argument that the Three-Year Limitations Period Should Bar Claims for Conduct *within that Period* .......17

            c.    The Three-Year Limitations Period Should not Bar Claims for Conduct outside that Period Either...............17

    C.    Plaintiffs Prohibited Transaction Claim, Count VI, is Timely ...........23

    D.    "Derivative" Counts III-V Should not be Dismissed..........................23

V.      CONCLUSION.......................................................................24

i

# TABLE OF AUTHORITIES

## CASES

*Auer v. Robbins*, 519 U.S. 452 (1997) ..................................................22

*Bhd. of Locom. Eng'rs & Trainmen v. CSX Transp.*, 522 F.3d 1190
(11th Cir. 2008).........................................................................................1

*Boeckman v. A.G. Edwards, Inc.*, 461 F.Supp.2d 801 (S.D. Ill. 2006) .................14

*Brink v. DaLesio*, 667 F.2d 420 (4th Cir. 1981) .......................................8

*Brock v. Nellis*, 809 F.2d 753 (11th Cir. 1987)...............................................11, 16

*Buccino v. Cont'l Assurance Co.*, 578 F. Supp. 1518 (S.D.N.Y. 1983) ................13

*Coughlin v. Capitol Cement*, 571 F.2d 290 (5th Cir. 1978) ...................................18

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ......................................7

*David v. Alphin*, 704 F.3d 327 (4th Cir. 2013) ......................................................15

*Deak v. Masters, Mates and Pilots Pens. Plan*, 821 F.2d 572 (11th
Cir. 1987) ..................................................................................................9

*DiFelice v. U.S. Airways*, 397 F. Supp. 2d 735 (E.D. Va. 2005) ..........................9

*DiFelice v. U.S. Airways*, 497 F.3d 410 (4th Cir. 2007) ........................................9

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982)................................................9

*Evans v. Bexley*, 750 F.2d 1498 (11th Cir. 1985) ....................................................9

*Fuller v. SunTrust Banks,* No. 1:11-784, 2012 WL 1432306 (N.D. Ga.
Mar. 20, 2012)......................................................................... passim

*George v. Kraft Foods Global, __F.Supp.2d__, No. 08-3799, 2011
WL 2784153* (N.D. Ill. July 14, 2011) ...................................................13

*Herman v. NationsBank Trust Co.*, 126 F.3d 1354 (11th Cir. 1997) ...............9, 22

*Howard Elec., Inc., Defined Benefit Pens. Plan v. Am. Bank & Trust
Co.*, No. 88-20399, 1990 U.S. Dist. LEXIS 7704 (N.D. Cal. Apr. 2,
1990) ........................................................................................................14

*In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir.2011)....................................20

*ITPE Pension Fund v. Hall*, 334 F.3d 1011 (11th Cir. 2003) ................................8

*Laboy v. Bd. of Trustees of Bldg. Serv. 32*, No. 12-3401, 2013 WL

811735 (2d Cir. Mar. 6, 2013) ..................................................................19, 20

*Leber v. Citigroup*, No. 07-9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011) .....................................................................................................13

*Lewis v. City of Chicago*, 130 S.Ct. 2191 (2010) ................................................15

*Marcella v. Capital Dist. Positions, Health Plan, Inc.*, 293 F.3d 42 (2d Cir. 2002) .........................................................................................................22

*Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078 (7th Cir. 1992) ...........13, 14

*Mass. Mut. Life v. Russell*, 473 U.S. 134 (1985) ....................................................9

*Massachusetts v. Morash*, 490 U.S. 107 (1989) ..................................................22

*New Orleans Empl. Int'l Longsh. Pens. Fund v. Mercer Inv. Consult's*, 635 F. Supp. 2d 1351 (N.D. Ga. 2009) .................................................10, 11, 16

*Pugliese v. Pukka Development*, 550 F.3d 1299 (11th Cir. 2008) ........................22

*Reich v. Johnson*, 891 F. Supp. 208 (D.N.J. 1995) ..............................................14

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) .................................................8

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .....................................................22

*Smith v. HCA*, 183 Fed.Appx. 854 (11th Cir. 2006) .............................................18

*Young v. GM Inv. Mgt. Corp.*, 325 Fed.Appx. 31 (2d Cir. 2009) .........................15

## STATUTES

29 U.S.C. §1104 ..................................................................................................5, 9

29 U.S.C. §1104(a)(1)(B) ..................................................................................9, 14

29 U.S.C. §1105 .....................................................................................................5

29 U.S.C. §1106 .....................................................................................................5

29 U.S.C. §1113 ...................................................................................................10

29 U.S.C. §1132(a) .................................................................................................2

## ADMINISTRATIVE AGENCY AUTHORITY

Amicus Brf. of Sec'y of Labor Sup. Pls.-Appellants, *Young v. GM Inv. Mgt. Corp.*, 325 Fed.Appx. 31 (2d Cir. 2009) ...........................................15

Amicus Brf. of Sec'y of Labor Sup. Pl.-Appellant, *Fuller v. SunTrust Banks, Inc., et al.*, No. 12-16217 (11th Cir.) .....................................................22

## TREATISES

Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* (2000) ............................................................................19

# I.   <u>INTRODUCTION</u>

The sole basis for Defendants' rule 12(b)(6) motion to dismiss is their asser-

tion of the affirmative defense of the statute of limitations.  To succeed on such a

motion Defendants must show that Plaintiffs' claims are untimely based upon the

allegations on the face of the complaint.  <u>Bhd. of Locom. Eng'rs & Trainmen v.</u>

<u>CSX Transp</u>., 522 F.3d 1190, 1194 (11th Cir. 2008).  Defendants have not met

their burden.

The majority of Defendants' brief is devoted to rehashing two arguments

that this Court soundly rejected in <u>Fuller v. SunTrust Banks</u>, No. 1:11-784, 2012

WL 1432306 (N.D. Ga. Mar. 20, 2012) (hereinafter "<u>Fuller</u>").

Defendants' first argument is that Plaintiffs' claims alleging Defendants

breached their fiduciary duties by failing to remove the Affiliated Funds are barred

by ERISA's six-year statute of limitations because most of the funds were selected

prior to the limitations period, and, Defendants maintain, selection is somehow the

central issue even though those claims do not challenge Defendants' conduct in se-

lecting the funds.  This Court correctly rejected that identical argument in <u>Fuller</u>.

Since those claims exclusively concern conduct that occurred within the six-year

limitations period, it is patently illogical to argue that they are untimely.  Moreo-

ver, Plaintiffs' failure to remove claims are distinct on almost every level from the

initial selection claims:  they concern different conduct, different losses, require

1

proof of different facts, and in some cases concern different Defendants.

Defendants' second argument is that *all* of Plaintiffs' claims are barred in their entirety by ERISA's three-year actual knowledge limitations period — including claims for failure to remove the challenged funds *within* the three-year limitations period.  This Court also correctly rejected that argument in <u>Fuller</u>.  This argument is also patently illogical:  a claim cannot be untimely to the extent it concerns conduct occurring within the limitations period.

Defendants' only arguments for dismissing Counts III-V are that they are derivative of Plaintiffs' fiduciary breach claims, and all of the latter are untimely.  Since the latter are clearly not all untimely for the reasons just discussed, Defendants' arguments for dismissing Counts III-V all fail.

The only arguments Defendants present that were not rejected in <u>Fuller</u> concern their claim that Plaintiffs had actual knowledge, and that Plaintiffs' prohibited transaction claims are time-barred.  Plaintiffs urge the Court to reject Defendants' actual knowledge argument in light of new authority discussed further herein.

## II.     <u>PLAINTIFFS' CLAIMS AND FACTUAL BACKGROUND</u>

This is an ERISA civil enforcement action pursuant to 29 U.S.C. §1132(a) to remedy Defendants' fiduciary breaches and prohibited transactions stemming from their corporate self-dealing in deciding what investment options to offer and retain in the 401(k) Plan.  Plaintiffs bring this action on behalf of the 401(k) Plan for re-

2

lief to the Plan and as a class action for similarly situated participants.  (Amended
Complaint ("AC"), Dkt. No. 16, ¶1).  Defendants are all SunTrust entities or Sun-
Trust directors or officers. (AC ¶¶18-27).  Their decisions favored SunTrust's in-
terests at the expense of the Plan and its participants' retirement savings.  Internal
SunTrust documents confirm that Defendants were aware that better performing
lower cost options were available for participants' retirement investments, but they
nevertheless chose and failed to remove SunTrust proprietary funds because of the
financial windfall having these funds in the Plan provided to SunTrust.  (AC
¶71(a)).  Defendants were aware that such conduct violated their fiduciary duties.
*Id.*

Plaintiffs are former SunTrust employees and 401(k) Plan participants who
worked at bank branches — Stargel as a teller manager and Pruitt as a clerical
worker and bookkeeper.  (AC ¶¶13, 15).  The 401(k) Plan is a defined contribution
plan.  (AC ¶29).

Defendant SunTrust Banks, Inc. ("SunTrust") is the 401(k) Plan sponsor and
a named fiduciary of the 401(k) Plan.  (AC ¶18, 33).  Defendant SunTrust Benefits
Plan Committee ("Plan Committee") and its individual members are Plan fiduciar-
ies named as such in the Plan document, and also the Plan administrator.  (AC
¶¶22, 35).  Defendant SunTrust Benefits Finance Committee ("Benefits Finance
Committee") was created effective July 1, 2011.  (AC ¶23).  Prior to that date, the

3

Plan Committee had exclusive authority to make decisions with respect to adding, monitoring, or removing 401(k) Plan investment options; subsequent to that date, the Benefits Finance Committee had exclusive authority for those decisions.  (AC ¶36).  (Collectively, these two committees and their individual members, for the times they had the authority for these decisions, are referred to as the "Committee Defendants.")  Defendants Correll, Lanier, and Prince were all members of the SunTrust Board of Directors and each served during a portion of the relevant period as Chair of the Board's Compensation Committee.  (AC ¶¶13-15).  The Chair of the Compensation Committee was a named fiduciary under the Plan and was responsible for appointing and monitoring members of the Plan Committee until 2008.  (AC ¶34, 37).  Effective on or about 2008, SunTrust's CFO assumed responsibility for appointing and monitoring members of the Plan Committee, and, once it was created, the Benefits Finance Committee.  (AC ¶37).  The Affiliated Funds are SunTrust proprietary mutual funds offered in  the Plan.  (AC ¶5).  The investment advisor for all of the Affiliated Funds, which received fees generated from investments in those funds, is RidgeWorth Capital Management, Inc. (AC ¶27).  RidgeWorth was a 401(k) Plan fiduciary and its representatives attended Plan Committee meetings and provided advice that was a principal basis for the Committee Defendants' investment decisions with respect to the 401(k) Plan.  (AC ¶27).  At least one of the Committee Defendants was a former RidgeWorth em-

4

ployee.  (AC ¶22(k)).

The Class is all 401(k) Plan participants (and their beneficiaries), excluding the Defendants, who had a balance through their Plan accounts in any of the Affiliated Funds at any time from April 10, 2004 to December 31, 2012 ("Class Period").  (AC ¶¶6, 89).  The claims in the AC are:

COUNT I:  Breach of Duties of Loyalty and Prudence by Failing to Remove or Replace the Affiliated Funds as 401(k) Plan Investment Vehicles during the Class Period, which Caused Losses to the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)

COUNT II:  Breach of Duties of Loyalty and Prudence by Selecting the STI Classic International Equity Index Fund as an Investment Fund for the 401(k) Plan (Violation of ERISA, 29 U.S.C. §1104 by Committee Defendants)

COUNT III:  Defendants Lanier, Prince, Correll, Chancy, and the Gillani Breached Their ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor Committee Defendants

COUNT IV:  Defendant SunTrust Breached its ERISA Fiduciary Duties by Failing to Remove and Prudently Monitor Defendants Lanier, Prince, Correll, Chancy, and Gillani

COUNT V:  Liability for Breach of Co-Fiduciary (Liability of Defendant SunTrust Pursuant to ERISA, 29 U.S.C. §1105 as Co-fiduciary for Participating in, Concealing, and Failing to Remedy Committee Defendants' Breaches of Fiduciary Duty)

COUNT VI:  Engaging in Prohibited Transactions by Causing the 401(k) Plan to Invest in SunTrust-Affiliated Investment Products (Violation of ERISA, 29 U.S.C. §1106 by Committee Defendants)

In addition, Plaintiffs allege Defendant RidgeWorth breached its fiduciary duties of prudence and loyalty by failing to give impartial investment advice to Committee Defendants regarding the retention and selection of the Affiliated Funds.  (AC

¶70).[1]

# III.   PROCEDURAL HISTORY

On April 24, 2008, 401(k) Plan participant Mary E. Lee initiated the process of exhausting administrative remedies by submitting on behalf of the 401(k) Plan a class claim that included the claims asserted in the AC.  (AC ¶98).  The inception date for the Class Period in that claim was April 25, 2002, six years before the claim was filed.  *Id.*  Mary Lee was not permitted any discovery during the claims review process, though 401(k) Plan fiduciaries did provide limited access to certain documents they elected to disclose.

The 401(k) Plan Fiduciaries who denied the claim and the appeal of the claim were the same fiduciaries accused of wrongdoing, and are Defendants in this case.  (AC ¶¶99-101).  Since these fiduciaries labored under a direct conflict of interest in evaluating Mary Lee's claim, essentially serving as judges of their own guilt, their decision was, of course, hardly surprising.  (AC ¶101).

Mary Lee has assigned all interests in her claim to subsequent named plain-

---

[1] Plaintiffs noted in the Joint Preliminary Report in Discovery Plan (Dkt. No. 17) that they had alleged a claim against RidgeWorth but had not included it in the recitation of counts in the complaint, and noted they might remedy this omission in a future amended complaint.  *Id.* at 10-11.  Defendants responded that they do not believe "that further amendment of the Complaint will be necessary for the reasons described by Plaintiffs." *Id.* at 11.  In light of Defendants' position that no amendment is necessary to clarify the claim against RidgeWorth, Plaintiffs do not intend to seek to amend the complaint for this reason alone.

tiffs in this action.  (AC ¶102).  Since this action is a continuation of Mary Lee's administrative class claim, the statute of limitations is tolled during the time she was exhausting administrative remedies.  This Court has previously found that time period to be 336 days.  Fuller 2012 WL 1432306 at *3-*4.

This suit is also a continuation of the putative class action Fuller v. SunTrust Banks, No. 1:11-784 (N.D. Ga.), which was filed March 11, 2011.  The named Plaintiffs here moved to intervene in that case as additional class representatives, but that motion was denied.  (Fuller Dkt. No. 69).  The pendency of a class action tolls the statute of limitations for similar suits.  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983).  Judgment was entered in Fuller on October 31, 2012.  This suit was filed on that same day.[2]

Plaintiffs filed their complaint in the instant suit on October 31, 2012.  On February 19, 2013, Plaintiffs amended their complaint as of right to allege certain facts and developments occurring after they filed their original complaint.  These included facts regarding the continued poor performance of the Affiliated Funds

---

[2] Defendants have assumed that for purposes of their motion the pendency of Fuller tolls the statute of limitations for this suit.  (Defs' Brf. at, Dkt. No. 18-1, at 13).  Defendants parenthetically reference certain collateral issues regarding the extent and scope of tolling, but do not argue them.  Id.  Since Defendants have not argued these issues, Plaintiff will not address them in this brief, but note their disagreement with Defendants' interpretation of the law.  If the Court intends to rule on these collateral issues in ruling on this motion, Plaintiffs request the opportunity to submit additional briefing.

through the end of 2012, and the decision by Plan fiduciaries to finally remove all of the Affiliated Funds from the Plan effective January 2, 2013 and replace them with Vanguard funds.  (AC ¶9).  (In effect, Defendants have belatedly taken the steps Plaintiffs in this litigation first advocated in 2008 — though it comes too late to prevent millions of dollars in losses for class members.)  In addition, Plaintiffs extended their Class Period through the end of 2012.

## IV.   ARGUMENT

### A.   ERISA Legal Background

#### 1.   ERISA and the Duties of ERISA Fiduciaries

A core purpose of ERISA is to protect employees' retirement security and benefits.  29 U.S.C. §1002(a); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  "ERISA is, of course, a remedial statute and should be given a liberal con-struction in order to carry out the vitally important public policies of protecting the integrity of employee benefit plan assets and of deterring fiduciary violations." *Brink v. DaLesio*, 667 F.2d 420, 427 (4th Cir. 1981); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003) ("ERISA is a remedial statute deserving of broad construction").  "Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).  Thus, ERISA empowers partici-

pants, like Plaintiff here, to sue on behalf of their plan.  29 U.S.C. §1132(a)(2).

ERISA's fiduciary duties are "the highest known to law."  *Herman v. NationsBank Trust*, 126 F.3d 1354, 1361 (11th Cir. 1997) (internal quotation marks omitted).  The two fundamental ERISA fiduciary duties are the duty of loyalty and the duty of prudence.  *Mass. Mut. Life v. Russell*, 473 U.S. 134, 143 n. 10 (1985); *Evans v. Bexley*, 750 F.2d 1498, 1499 (11th Cir. 1985).  The duty of loyalty requires that a fiduciary's "decisions must be made with an eye single to the interest of the participants and beneficiaries."  *Deak v. Masters, Mates and Pilots Pens. Plan*, 821 F.2d 572, 580-81 (11th Cir. 1987) (quoting *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982), *cert. denied*, 459 U.S. 1069)).  The duty of prudence requires fiduciaries to act with the care, skill, diligence and prudence of a person familiar with such matters.  29 U.S.C. §1104(a)(1)(B).

With respect to investments, a "fiduciary of a defined contribution...plan... who is given discretion to select and maintain specific investment options for participants — must exercise prudence in selecting and *retaining* available investment options."  *DiFelice v. U.S. Airways*, 497 F.3d 410, 418 (4th Cir. 2007) (emphasis added).  The general ERISA fiduciary duties with respect to investments include the duty of "monitoring plan investments 'with the care, skill, prudence and diligence...that a prudent man acting in a like capacity and familiar with such matters would use'."  *DiFelice v. U.S. Airways*, 397 F. Supp. 2d 735, 743 (E.D. Va. 2005).

9

"When evaluating an alleged breach of fiduciary duty under ERISA [relating to investments], courts use an objective standard, focusing on whether the fiduciary employed appropriate methods to reach an investment decision." *New Orleans Empl. Int'l Longsh. Pens. Fund v. Mercer Inv. Consult's*, 635 F. Supp. 2d 1351, 1372 (N.D. Ga. 2009) (Evans, J.).

### 2. ERISA's Statute of Limitations

ERISA's statute of limitations provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> > **(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > **(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. §1113 (emphasis added).

The Eleventh Circuit has emphasized that the "six-year time period reflects Congress' determination to impress upon those vested with the control of pension funds the importance of the trust they hold. Thus, Congress evidently did not desire that those who violate that trust could easily find refuge in a time bar." Brock

v. Nellis, 809 F.2d 753, 754 (11th Cir. 1987) (emphasis added).

**B.**   **Plaintiffs' Three Non-Derivative Fiduciary Breach Claims (Counts I-II & Claim against RidgeWorth) are Timely**

Plaintiffs assert three fiduciary breach claims in the AC that are not derivative of, or dependent upon, a finding of breach by other fiduciaries (the "Non-derivative Fiduciary Breach Claims").  Count I is a claim for breach of the fiduciary duties of loyalty and prudence by Committee Defendants for failure to remove the Affiliated Funds.  (AC ¶¶105-111).[3]  These omissions occurred repeatedly at Plan Committee meetings, which were held four or more times per year during the Class Period, and were intended for, *inter alia*, monitoring the performance and fees of the Plan's investment vehicles.  (AC ¶¶59-60).  Count II is a claim for breach of the duties of loyalty and prudence by the Committee Defendants in their selection of the STI Classic International Equity Index Fund.  (AC ¶¶112-19).  Count II is the only claim in the AC concerned with selection of the Affiliated Funds.  The final non-derivative claim is alleged in the complaint but not listed as a specific count.  It is the claim that Defendant RidgeWorth breached its duties of

---

[3] Defendants' reference to these claims as "the Prudence Claims," (Defs' Brf. at 1), is inaccurate because the claims are for breach of the duty of loyalty as well as prudence, (AC ¶¶96, 105), and these are of course different duties, *New Orleans Empl. Int'l Longsh. Pens. Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1371 (N.D. Ga. 2009) (Evans, J.) ("[a] claim of breach of fiduciary duty may be based on failure of the fiduciary's obligation of exclusive loyalty...or on the fiduciary's failure to exercise the appropriate degree of care").

prudence and loyalty by providing investment advice to Committee Defendants that favored its own interest in preserving 401(k) Plan investment in RidgeWorth's own Affiliated Funds.  (AC ¶70).

### 1.    The Non-derivative Fiduciary Breach Claims Satisfy ERISA's Six-Year Limitations Period

Defendants concede that the Non-derivative Fiduciary Breach Claims are timely under the six-year period to the extent they concern the one Affiliated Fund selected within the period:  the STI Classic International Equity Index Fund.[4] (Dkt. No. 18-1 ("Defs' Brf.") at 16).  They continue to maintain, however, just as they did in <u>Fuller</u>, that Plaintiffs' claims concerning the other seven Affiliated Funds are barred under the six-year period merely because the other Affiliated Funds were selected prior to the six-year period.  *Id.*

Defendants' argument is illogical.  None of the Non-Derivative Fiduciary Breach Claims assert that Defendants breached their fiduciary duties with respect to conduct in selecting the other seven Affiliated Funds.  Instead, with respect to the other seven funds, those claims exclusively concern Defendants' failure to remove those funds during the six-year period.  Those failure to remove claims are distinct in almost every respect from the initial selection claims:  they concern dif-

---

[4] Unless the context indicates otherwise, references to "six-year period" and "three-year period" in this brief should be understood to include 336 days of tolling for exhausting administrative remedies.

ferent conduct, different losses, require proof of different facts, and in some cases concern different Defendants.  For example, the basis for these failure to remove claims includes, in part, the poor performance of these funds in the years preceding the meetings in which they were not removed.  Thus, for example, the claim that Defendants breached their duties by not removing the Capital Appreciation Fund in 2004 includes the poor performance of that fund in the preceding five years, from 1999 through 2004.  Since the fund was selected in 1997, (AC ¶61), that performance history did not even exist at that time.  Moreover, some of the funds, such as the Small-Cap Growth Stock Fund, which was selected in 1999, (AC ¶61), were new funds when they were selected and had virtually no performance history at all, so any objections to their selection could not have been based on performance. (Decl. of James A. Moore in Opp. to Defs' Motion to Dismiss Am. Compl. ("Moore Decl."), filed herewith, Ex. G (indicating October 1998 inception date for Small-Cap Growth Stock Fund)).

This Court thus soundly found in <u>Fuller</u> that the six-year period did not bar those claims, <u>Fuller</u>, 2012 WL 1432306 at *10, and the vast majority of courts that have considered the issue,[5] as well as the U.S. Department of Labor,[6] have agreed.

---

[5] <u>Martin v. Consultants & Adm'rs, Inc.</u>, 966 F.2d 1078, 1087 (7th Cir. 1992) (on account of the "continuing nature of [the fiduciaries'] dut[ies] under ERISA to review plan investments and eliminate imprudent ones," each repeated failure to act

prudently created a "new transaction and a distinct violation"); <u>Leber v. Citigroup</u>, No. 07-9329, 2011 WL 5428784 at *4 (S.D.N.Y. Nov. 8, 2011) (even though ERISA fiduciaries selected funds for 401(k) plan before the ERISA limitations period, claims for failure to eliminate those funds within the limitations period were timely); <u>George v. Kraft Foods Global, 814 F.Supp.2d 832, 851-52 (N.D. Ill. 2011)</u> (same); <u>Buccino v. Cont'l Assur.</u>, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983) (in ERISA fiduciary breach case court found "although the statute of limitations may protect defendants from liability for the initial purchase decision..., it does not bar suit for defendants' continued failure [during the limitations period] to take steps to terminate" the imprudent investments in the plan); <u>Reich v. Johnson</u>, 891 F. Supp. 208, 209 (D.N.J. 1995) (finding plaintiffs' action was timely because they "filed...within six years of the time in which defendants could have cured the alleged breaches stemming from the 1988 [stock purchases]"); <u>Howard Elec. v. Am. Bank & Trust</u>, No. 88-20399, 1990 U.S. Dist. LEXIS 7704 at *22 (N.D. Cal. Apr. 2, 1990) (agreeing with plaintiffs that their action was timely because "the breaches of fiduciary duty complained of are not the [initial] investments themselves, but the failure to properly monitor the diversification of the investment portfolio"); *see also* <u>Boeckman v. A.G. Edwards</u>, 461 F.Supp.2d 801, 814 (S.D. Ill. 2006) ("allegations that, following the execution of the release, AG Edwards continued to breach its [ERISA] fiduciary duty by continuing to pay excessive fees to mutual funds represent new, prospective claims not in existence when the release was executed").

[6] In a recent amicus brief the DOL opined in a similar case challenging the inclusion of single equity funds in a 401(k) Plan:

> On account of the "continuing nature of [the fiduciaries'] dut[ies] under ERISA to review plan investments and eliminate imprudent ones," each repeated failure to act prudently created a "new transaction and a distinct violation." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1087 (7th Cir. 1992) . ....

> Here, the Defendants' alleged failure to monitor similarly gave rise to a new cause of action each time the Plan was injured by the continued maintenance of the single-equity funds and payment of the fees. ... **Otherwise, a fiduciary could permanently violate the statute with impunity once three years had passed, as long as he continued to breach the law in similar ways. Such a rule would undermine the stringency of the "the continuing nature" of a fiduciary's duties**

14

In addition, the Supreme Court recently rejected, in the employment discrimination context, an argument analogous to Defendants' argument that only the initial decision is actionable. *See Lewis v. City of Chicago*, 130 S.Ct. 2191, 2198-2200 (2010).

The only nominally new reason Defendants offer as a basis for the Court to reconsider its <u>Fuller</u> holding is non-controlling authority from another circuit, <u>David v. Alphin</u>, 704 F.3d 327 (4th Cir. 2013). But even this is not really new. Defendants already submitted the district court decision in that case as supplemental authority prior to this Court's ruling in <u>Fuller</u>. (*See* <u>Fuller</u> Dkt. No. 53). The portion of the Fourth Circuit opinion dealing with fiduciary breach limitations issues is nothing but a perfunctory affirmance of that flawed district court decision. *See* 704 F.3d at 341. It does not cite a single authority in support of its holding, discusses none of the multitude of cases that conflict with its holding, and simply repeats the district court's flawed rationale for its holding. Most of the opinion is devoted to other issues that are of no relevance here, and the opinion itself expressly rejects the implication that its untimeliness holding is establishing a general

---

and leave them "free to engage in repeated violations, so long as they have once been discovered but not sued." [*Id.*] at 1087-88, citing 29 U.S.C. §1104(a)(1)(B).

(Moore Decl., Ex. A (Amicus Brf. of Sec'y of Labor Sup. Pls.-Appellants, *Young v. GM Inv. Mgt. Corp.*, 325 Fed.Appx. 31 (2d Cir. 2009)) at 27-28 (bold emphasis added)).

15

principle applicable to other cases: "we do not decide whether ERISA fiduciaries have an ongoing duty to remove imprudent investment options in the absence of a material change in circumstances," *id.* The case is a classic example of a holding that should carry no weight in other circuits.

2.     **The Non-Derivative Fiduciary Breach Claims are Timely under ERISA's Three-Year Period**

a.     **Legal Background of ERISA's Actual Knowledge Provision**

The Eleventh Circuit has held that ERISA's three-year actual knowledge limitations period is an "exception" to ERISA's six-year period. *Brock v. Nellis*, 809 F.2d 753, 754 (11th Cir. 1987). Accordingly, "[c]ourts have construed the 'actual knowledge' requirement strictly; constructive knowledge is inadequate, rather, the plaintiff must have knowledge of the facts or transaction that constituted the breach in order to trigger the statute of limitations." *New Orleans Empl. Int'l Longsh. Pens. Fund v. Mercer Inv. Consul.*, 635 F. Supp. 2d 1351, 1378 (N.D. Ga. 2009) (Evans, J.). To have actual knowledge "it is not enough that [a plaintiff] had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." *Brock*, 809 F.2d at 755.

16

### b.   **This Court Has Already Rejected Defendants' Illogical Argument that the Three-Year Limitations Period Should Bar Claims for Conduct _within that Period_**

Defendants argue not only that Plaintiffs' fiduciary breach claims would be barred to the extent they seek relief for conduct occurring outside the three-year limitations period, but that they are barred in their entirety, including the claims for conduct occurring within the three-year limitations period.  The Court soundly rejected this illogical argument in <u>Fuller</u>:

> Plaintiff claims that the Committee met at least four times per year and that at each of these meetings, the Committee Defendants breached their duties by failing to remove the STI Classic Funds. Plaintiff may be able to show that at some point within the three-year limitation period, the Committee members did not act prudently in retaining the STI Classic Funds.  To the extent the Committee acted imprudently between April 10, 2007 and March 11, 2011, this claim is not barred by the three-year statute of limitations.  As such, Defendants' motion to dismiss Count II is DENIED.

<u>Fuller</u>, 2012 WL 1432306 at *12.  Defendants offer no new reason the Court should reconsider its previous holding.

### c.   **The Three-Year Limitations Period Should not Bar Claims for Conduct outside that Period Either**

One of the few arguments Defendants advance that the Court has not already rejected is their argument that Plaintiffs' claims within the three-year limitations period are barred because, Defendants contend, Plaintiffs had actual knowledge of the breach since at least 2005.  (Defs' Brf. at 24).  Plaintiffs offered their rebuttal to

17

this argument at length in <u>Fuller</u>, arguing, *inter alia*, that neither the complaint allegations nor Defendants' attached documents provided a sufficient basis for finding Plaintiff had actual knowledge.  Plaintiffs will not burden the Court with a repetition of that rebuttal here.  Instead, for purposes of creating a record for appeal, Plaintiffs restate below their objection to Defendants offering documents beyond the pleadings and incorporate by reference the arguments in their opposition briefs filed in <u>Fuller</u>, as well as their motion to reconsider brief.  (Moore Decl., Exs. C (esp. pages 11-14, 22-32), and D-F)  None of Defendants' arguments regarding actual knowledge here or in <u>Fuller</u> rely upon any facts peculiar to any of the named Plaintiffs — indeed they could not because Defendants have conducted no discovery regarding what any named plaintiff actually knew — so these arguments should apply equally in this case.  (Defendants have also submitted the same unauthenticated documents).  In addition, Plaintiffs offer two authorities post-dating the <u>Fuller</u> decision that support rejection of Defendants' actual knowledge argument.

With respect to Defendants' documents, for the record, Plaintiffs dispute the authenticity of these documents.  Defendants offer no affidavit or other means of authenticating the documents, and for all Plaintiffs know these could have been drafts that were never made available or otherwise used.  Without authentication,

18

the Court cannot properly consider these documents.[7]  Plaintiffs also dispute that

the documents are central to Plaintiffs' claims.  There is no evidence in the record

that Plaintiffs have ever even seen any of these documents before Defendants filed

them in this case.  Moreover, Defendants have not offered the documents to expli-

cate Plaintiffs' claims, but solely to provide a basis for their affirmative defense of

the statute of limitations.  None of the documents are attached to the AC or are

quoted in the AC.  Neither of the two documents containing fee and performance

information for the public versions of the Affiliated Funds (as opposed to the ver-

sions actually used in the 401(k) Plan (*see* AC ¶42)), Dkt. Nos. 18-6 & 18-7, are

even mentioned in the AC.  Plaintiffs also note that the document entitled "401(k)

Plan Prospectus," (Dkt. No. 18-7, Ex. D), cannot properly be referred to as a "plan

document."  Nowhere in that document is the 401(k) Plan ever mentioned..  It ap-

pears to be a generic document, probably prepared by RidgeWorth (Trusco), for

use in conjunction with any 401(k) Plan that offered the Affiliated Funds.  Defend-

---

[7] Smith v. HCA, 183 Fed.Appx. 854, 855 (11th Cir. 2006) (unauthenticated inves-
tigative report properly excluded from consideration in summary judgment pro-
ceedings related to ERISA claims); Coughlin v. Capitol Cement, 571 F.2d 290,
307 (5th Cir. 1978) ("[t]here can be no doubt but that the party who seeks to intro-
duce written evidence must in some way authenticate it"); 31 Charles Alan Wright
& Victor James Gold, Federal Practice and Procedure §7101 at 1 (2000) (the "re-
quirement that a party offering an item of non-testimonial evidence prove that the
item is what he claims it to be is, in Wigmore's words, 'not any artificial principle
of evidence, but an inherent logical necessity'").

ants offer no evidence that it was actually used in conjunction with the SunTrust 401(k) Plan.

The first new post-<u>Fuller</u> authority to which Plaintiffs wish to draw the Court's attention is <u>Laboy v. Bd. of Trustees of Bldg. Serv. 32</u>, No. 12-3401, 2013 WL 811735 (2d Cir. Mar. 6, 2013). <u>Laboy</u> affirmed dismissal for failure to state a claim of an ERISA suit alleging fiduciaries breached their duties by failing to remove a fund that had high fees and poor performance relative to comparable funds. Specifically, the Plaintiffs alleged that fiduciaries breached their duties by failing "to discontinue the Putnam Fund as their default fund even when it was clear that the Putnam Fund lagged behind comparable funds in his performance and management expenses." *Id.* at *1. The Second Circuit found plaintiffs had failed to state a claim. It explained:

> These allegations are insufficient to meet Laboy's burden to plead a breach of fiduciary duty. It is well-established that allegations of poor results alone do not constitute allegations sufficient to state a claim for such a breach. <u>In re Citigroup ERISA Litig.</u>, 662 F.3d 128, 140 (2d Cir.2011) (noting that "[t]he test of prudence is ... one of conduct rather than results"). As the district court correctly held, Laboy has failed to allege any conduct by Defendants that could plausibly establish a breach of fiduciary duty.

*Id.* at *2. In <u>Fuller</u> this Court held that because "Plaintiff has been aware of the performance and fees of these funds since at least 2005...[she had] actual knowledge of the essential facts of her claim more than three years prior to filing

20

this suit." 2012 WL 1432306 at *12. Yet here, the Second Circuit found that that

same information was insufficient to state a plausible claim of imprudent invest-

ment, let alone constitute actual knowledge of the breach. Consistent with <u>Laboy</u>'s

holding that a fiduciary breach claim must reference facts regarding the defend-

ants' conduct in making investment decisions, not merely fee and performance da-

ta, this Court should find that Plaintiffs here lacked actual knowledge of the fiduci-

ary breaches alleged in the AC. It is undisputed that Plaintiffs lacked knowledge

of the process Defendants employed in selecting the funds prior to the filing of the

<u>Fuller</u> complaint in 2011. (*See* AC ¶¶14(iii), 16(iii)).[8]

---

[8] As they did in <u>Fuller</u>, Defendants seek to create, through artful use of ellipses and shortened quotations, a false dispute regarding the accuracy of complaint allegations on other aspects of Plaintiffs' knowledge. (Defs' Brf. at 22).

Specifically, and contary to Defendants' claims, Plaintiffs do not deny that performance and expense information regarding the public versions of the Affiliat-ed Funds was available to participants. Defendants create the false impression that Plaintiffs have claimed the opposite by quoting the following allegation and replac-ing the italicized phrase with an ellipsis: "performance and expense information *regarding the unitized funds actually offered in the 401(k) Plan* is not available to 401(k) Plan participants." (*Id.* quoting AC ¶42).

Defendants also play games with quotations by falsely attributing to Plain-tiffs the following allegation:

"the Plan 'did not disclose that the Affiliated Funds were SunTrust proprietary funds, the investment adviser was a SunTrust subsidiary, [or] the amount of fees charged by the Affiliated Funds'."

(Defs' Brf. at 22 quoting AC ¶43.) Defendants manufactured this purported alle-gation by adding the words "the Plan" to the beginning and omitting from the be-

The second post-<u>Fuller</u> authority is an amicus brief filed by the U.S. Department of Labor ("DOL").  The brief was submitted in support of Plaintiff Fuller's appeal of the actual knowledge finding in the <u>Fuller</u> decision.  This brief is filed herewith as Exhibit B to the Moore Declaration.  The DOL is the agency with principal responsibility for enforcement of ERISA's fiduciary standards, so its views in interpreting ERISA's statute of limitations are entitled to deference.[9] (Plaintiffs do not maintain, however, that the strictest type of deference, <u>Chevron</u> deference, is owed to such pronouncements.)[10]

---

ginning the actual subject of the sentence, which is the "401(k) Plan's Summary Plan Description." (AC ¶43).  Hence, the actual allegation only references a single document.

[9] *See* <u>Massachusetts v. Morash</u>, 490 U.S. 107, 116-18 (1989) (deferring to DOL's interpretation of the phrase "employee welfare benefit plan" in ERISA); <u>Marcella v. Capital Dist. Positions, Health Plan, Inc.</u>, 293 F.3d 42, 48 (2d Cir. 2002) (deferring to DOL's interpretation of ERISA's definition of "employer").  Interpretations of statutes and regulations made by the agency with responsibility for their enforcement and administration, even though they lack the force of law and are not subject to the requirements of notice and comment rule making, are entitled to judicial deference to the extent they have "power to persuade."  <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 139-40, 65 S.Ct. 161, 164 (1944); <u>Pugliese v. Pukka Development</u>, 550 F.3d 1299, 1305 (11th Cir. 2008).  This deference applies to agency interpretations in *amicus curiae* briefs.  *See* <u>Auer v. Robbins</u>, 519 U.S. 452, 462-63 (1997) (applying *Chevron* deference to DOL's legal interpretation expressed in *amicus curiae* brief); <u>Pugliese</u>, 550 F.3d at 1305 (applying *Skidmore* deference to *amicus* brief).

[10] In briefing in <u>Fuller,</u> Defendants misrepresented Eleventh Circuit authority on the issue of deference.  They described <u>Herman v. NationsBank Trust Co.,</u> 126

**C.**   **Plaintiffs Prohibited Transaction Claim, Count VI, is Timely**

Defendants argue that Count VI, asserting an ERISA-prohibited transaction claim, is untimely . (Defs' Brf. at at 16-17, 20-21). Plaintiffs incorporate by reference the rebuttal of this argument presented in their brief submitted in <u>Fuller</u>. (Moore Decl. Ex. C at 32-36).

**D.**   **"Derivative" Counts III-V Should not be Dismissed**

Defendants offer no argument for dismissing Counts III-V other than that they are claims that depend upon a finding that other fiduciaries breached their duties and violated ERISA, and that those other claims are untimely. (Defs' Brf. at 25). For the reasons discussed above, the other claims are not untimely. Hence, there is no basis to dismiss Counts III-V.

---

F.3d 1354, 1363 (11th Cir. 1997) as holding "DOL interpretations of ERISA contained only in amicus briefs and other 'litigation documents' are due no special deference." (<u>Fuller</u> Dkt. No. 47 at 13 n. 28). Defendants' description of the holding is inaccurate in at least three respects: (i) contrary to Defendants' implication, <u>Herman</u> was clearly not addressing deference in general but only strict <u>Chevron</u> deference, (ii) <u>Herman</u> never issued a holding regarding the deference owed to litigation documents but only said they "may" not be due <u>Chevron</u> deference, and (iii) <u>Herman</u> never even mentions amicus briefs, which must be distinguished from the ordinary litigation documents the government necessarily submits when it is a party to litigation, let alone address the deference owed to statements in them. 126 F.3d at 1363. In any event, the authorities cited in the preceding footnote make clear that amicus briefs *are* entitled to the less strict form of deference known as <u>Skidmore</u> deference.

## V.    **CONCLUSION**

Defendants' Motion to Dismiss should be denied.


March 25, 2013                              Respectfully Submitted,

                                           By /s/  James A. Moore _____

                                           J. Brian McTigue (*Admitted Pro Hac Vice*)
                                           James A. Moore (*Admitted Pro Hac Vice*)
                                           **MCTIGUE LAW LLP**
                                           4530 Wisconsin Avenue, NW
                                           Suite 300
                                           Washington, DC  20016
                                           Tel:  (202) 364-6900
                                           Fax: (202) 364-9960
                                           bmctigue@mctiguelaw.com
                                           jmoore@mctiguelaw.com

                                           *Counsel for Plaintiffs Sandra D. Stargel and Selethia Pruitt*

                                           Alan R. Perry, Jr. (GA Bar #572508)
                                           **PAGE PERRY, LLC**
                                           1040 Crown Pointe Parkway
                                           Suite 1050
                                           Atlanta, Georgia 30338
                                           (P) 770-673-0047
                                           (F)770-673-0120
                                           aperry@pageperry.com

                                           *Local Counsel for Plaintiffs Sandra D. Stargel and Selethia Pruitt*

24

# lOCAL RULE 7.1(D) CERTIFICATION

This brief has been prepared in Times New Roman 14 point type, as authorized by LR 5.1(C).

By /s/ James A. Moore _____

James A. Moore (*Admitted Pro Hac Vice*)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax: (202) 364-9960
jmoore@mctiguelaw.com

# <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 25, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to the following attorneys of record:

**Darren A. Shuler**
King & Spalding, LLP-ATL
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
404-572-2790
Email: dshuler@kslaw.com

**Michael Benjamin Wakefield**
King & Spalding, LLP-ATL
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
404-572-2825
Email: mwakefield@kslaw.com

**David Tetrick , Jr.**
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309-3521
404-572-4600
Email: dtetrick@kslaw.com

/s/ James A. Moore
McTigue Law LLP

26