# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

SANDRA D. STARGEL, et al.

      Plaintiffs,

vs.

SUNTRUST BANKS, INC., et al.

      Defendants.

Case No.: 1:12-CV-03822-ODE

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
# TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

David Tetrick, Jr.
Georgia Bar No. 713653
Darren A. Shuler
Georgia Bar No. 644276
Michael B. Wakefield
Georgia Bar No. 950517

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3531
(404) 572-4600
(404) 572-5139 (facsimile)

In <u>Fuller v. SunTrust Banks, Inc.</u>,[1] this Court mostly dismissed a complaint that is, in all material respects, identical to Plaintiffs' Amended Complaint in this case.  So, in their Motion to Dismiss, Defendants requested that the Court dismiss Plaintiffs' Amended Complaint for the same reasons it dismissed the complaint in <u>Fuller</u>.  Defendants also requested that the Court, prior to deciding whether Plaintiffs' claims are time-barred here, revisit two grounds on which it declined to dismiss the <u>Fuller</u> complaint.

First, Defendants notified the Court of the Fourth Circuit's intervening decision in <u>David v. Alphin</u>,[2] a strikingly similar case challenging affiliated funds offered in Bank of America's 401(k) plan, and argued that the Court should follow <u>David</u> and find Plaintiffs' claims barred by ERISA's six-year limitations period.[3] Second, Defendants respectfully submitted that the Court should not repeat here its determination in <u>Fuller</u> that, although Fuller had actual knowledge of the facts underlying her claims more than three years before filing suit, ERISA nevertheless allowed Fuller to pursue claims during the three-year period immediately

---

[1] No. 1:11-cv-00784-ODE (N.D. Ga.).

[2] 704 F.3d 327 (4th Cir. 2013).

[3] Since Defendants filed their Motion to Dismiss, the Ninth Circuit issued an opinion following <u>David</u> and holding "that the act of designating an investment for inclusion [in a 401(k) plan menu] starts the six-year period under [ERISA] section 413(1)(A)."  <u>Tibble v. Edison Int'l</u>, --- F.3d ----, Nos. 10-56404 and 10-56415, 2013 WL 1174167, at *2 (9th Cir. Mar. 21, 2013).

preceding her complaint. Defendants did so because the text of ERISA § 413(2) provides that "[n]o action may be commenced . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."[4]

In their Brief in Opposition, Plaintiffs chastise Defendants for "rehashing two arguments that this Court soundly rejected in Fuller" and dismiss both as "patently illogical."[5] Two recent Court of Appeals opinions and the plain text of ERISA say otherwise. This Court should dismiss Plaintiffs' Amended Complaint for the reasons it dismissed the substantively identical complaint in Fuller, and for the additional reasons set forth in Defendants' Motion to Dismiss.

## I. Plaintiffs' Prudence Claims Are Barred by ERISA's Six-Year Repose Period With Respect to Seven of the Eight STI Classic Funds.

Plaintiffs assert that it is "patently illogical" to argue that their Prudence Claims are untimely because, although seven of the eight STI Classic Funds were selected outside of ERISA's six-year repose period, the Prudence Claims were carefully pleaded to "exclusively concern Defendants' failure to remove those funds during the six-year period."[6] Plaintiffs argue that, because Defendants had an ongoing duty to monitor and remove imprudent investments each time they met,

---

[4] 29 U.S.C. § 1113(2).

[5] Opp. Br. at 1-2 (Dkt. No. 20).

[6] Opp. Br. at 1, 12.

the repose period reset at every meeting when they failed to remove the STI Classic Funds.[7] According to Plaintiffs, "the vast majority of courts that have considered the issue, as well as the U.S. Department of Labor, have agreed" that the continuing violation theory operates to indefinitely extend ERISA's six-year repose period.[8]

But, in fact, the only two Circuits to consider this theory in the context of claims challenging an ERISA fiduciary's inclusion of funds in a 401(k) plan investment menu have squarely rejected it.[9] Plaintiffs disdain the Fourth Circuit's recent decision in David v. Alphin as "nothing but a perfunctory affirmance of [a] flawed district court decision," but provide no substantive reason why this Court should ignore the Fourth Circuit's reasoning.[10] And Plaintiffs' prediction that David "is a classic example of a holding that should carry no weight in other circuits"[11] failed shortly before Plaintiffs filed their opposition brief. In Tibble v. Edison International, the Ninth Circuit followed David and held "that the act of

---

[7] Opp. Br. at 12-13; Am. Compl. ¶¶ 107-109.

[8] Opp. Br. at 13.

[9] See David v. Alphin, 704 F.3d 327; Tibble v. Edison Int'l, --- F.3d ----, 2013 WL 1174167.

[10] Opp. Br. at 15.

[11] Opp. Br. at 16.

designating an investment for inclusion [in a 401(k) plan menu] starts the six-year period under [ERISA] section 413(1)(A)."[12]

In Tibble, as in David, the plaintiffs and the DOL argued that, "[b]ecause fiduciary duties are ongoing, and because [ERISA] section 413(1)(A) speaks of the 'last action' that constitutes the breach, these claims are . . . timely for as long as the underlying investments remain in the plan."[13] In other words, the Tibble court noted, "they argue that we should either equitably engraft onto, or discern from the text of section 413 a 'continuing violation theory.'"[14] But the Tibble court recognized that "would make a hash out of ERISA's limitation period and lead to an unworkable result."[15] After pointing out that the plaintiffs' and the DOL's "logic 'confuse[s] the failure to remedy the alleged breach of an obligation, with the commission of an alleged second breach, which as an overt act of its own recommences the limitations period,'"[16] the Tibble court explained that the approach advocated by the plaintiffs and the DOL would undermine the very purpose of ERISA's period of repose:

---

[12] 2013 WL 1174167, at *2.

[13] Id.

[14] Id.

[15] Id.

[16] Id. at *3 (citation omitted).  Indeed, the Tibble court squarely rejected the same DOL *amicus* argument that Plaintiffs have advanced here.

4

> Characterizing the mere continued offering of a plan option, without more, as a subsequent breach would render section 413(1)(A) "meaningless and [could even] expose present Plan fiduciaries to liability for decisions made by their predecessors—decisions which may have been made decades before and as to which institutional memory may no longer exist." David v. Alphin, 817 F.Supp.2d 764, 777 (W.D.N.C. 2011), aff'd, 704 F.3d 327, 342-43 (4th Cir. 2013). We decline to proceed down that path. As with the application of any statute of limitations, we recognize that injustices can be imagined, but section 413(1) "suggests a judgment by Congress that when six years has passed after a breach or violation, and no fraud or concealment occurs, the value of repose will trump other interests, such as a plaintiff's right to seek a remedy." Larson v. Northrop Corp., 21 F.3d 1164, 1172 (D.C. Cir. 1994).[17]

Here, Plaintiffs' Amended Complaint alleges that the STI Classic Funds were imprudent from the time each was added to the Plan (which occurred by at least 2002 for all but the International Equity Index Fund), not that they <u>became</u> imprudent because of some change in the fees they charged, the performance they returned, or by comparison to an alternative investment that came onto the scene during the purported eight-year Class Period.[18] Accordingly, just as in David and in Tibble, Plaintiffs' Prudence Claims as to seven of the eight STI Classic Funds are barred by ERISA's six-year repose period. And, because the Amended

---

[17] Id. at *3.

[18] Am. Compl. ¶¶ 3-4, 7-8, 57, 72(a)-(d), 73(a)-(c) (Dkt. No. 16).

5

Complaint reveals that Pruitt never invested in the International Equity Index Fund,[19] if the Court grants Defendants' Motion for Summary Judgment as to Stargel, it should dismiss Pruitt's purported claims regarding the eighth Fund for lack of standing, just as it did in Fuller.[20]

## II. Plaintiffs' Prudence Claims Are Completely Barred by ERISA's Three-Year Limitations Period.

### A. As in Fuller, the Plan documents attached to Defendants' Motion to Dismiss are properly before the Court.

Under Eleventh Circuit law, a court reviewing a motion to dismiss may consider documents attached to a motion to dismiss where they are referred to in the complaint, central to the claims, and "undisputed" in the sense that "the authenticity of the document is not challenged."[21] The Plan documents attached to Defendants' Motion to Dismiss satisfy these requirements.[22] Plaintiffs' Amended

---

[19] Am. Compl. ¶ 15.

[20] Fuller, Doc. 59, at 18-20.

[21] Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284-85 (11th Cir. 2007).

[22] See Hecker v. Deere & Co., 556 F.3d 575, 582-83 (7th Cir. 2009) (considering seven SPDs to which "[t]he Complaint explicitly refer[red]," and which were "central to plaintiffs' case [because they] reveal[ed] the disclosures that [defendant] made to the Plan participants"; "two SPD supplements" that, "while not mentioned separately in the Complaint, serve[d] much the same purpose as the originals"; and "three fund prospectuses" not mentioned in the complaint but that "were publicly available documents and thus relevant to the question of disclosure").

6

Complaint expressly references the Plan Document and the SPD,[23] and the SPD directly incorporates the QIP Booklet and the 401(k) Plan Prospectus by reference.[24]  Plaintiffs contend that the 401(k) Plan Prospectus "cannot properly be referred to as a 'plan document'" because "[i]t appears to be a generic document, probably prepared by RidgeWorth (Trusco), for use in conjunction with any 401(k) Plan that offered the [STI Classic] Funds."[25]  But this argument proves too much.  The Department of Labor has issued detailed regulations requiring the fiduciaries of ERISA plans like SunTrust's to provide participants with the same information about the STI Classic Funds that is disclosed to the public in SEC filings, including "[c]opies of any prospectuses, financial statements and reports, and any other materials relating to the investment alternatives available under the plan."[26]  And

---

[23] Am. Compl. ¶¶ 106, 43.

[24] See SPD at 155 (Dkt. No. 18-5) (expressly incorporating, under the heading "Documents Incorporated by Reference," the "quarterly fund performance information" available at the online SunTrust Benefits Service Center and contained in the QIP Booklet); QIP Booklet, at 1, 6 (Dkt. No. 18-6) (incorporating by express reference the 401(k) Plan Prospectus).

[25] Opp. Br. at 19.

[26] See 29 CFR 2550.404c-1(b)(2)(i)(B)(2)(i)-(ii) (2009) (requiring that fiduciaries of "404(c) plans," such as the Plan, provide participants with expense ratios and other materials disclosing information about fees, expenses, and performance of plan investment options).

that is why the Prospectus describing each of the STI Classic Funds was incorporated into the SPD and provided to Plan participants.[27]

And Plaintiffs' suggestion that the Plan documents disclosed "fee and performance information for the public versions of the [STI Classic] Funds (as opposed to the versions actually used in the 401(k) plan" is both incorrect and misguided.[28]  As the table below summarizes, the Plan documents disclosed <u>the exact same</u> expense ratios that the Amended Complaint alleges caused the STI Classic Funds to be imprudent:

| Fund Name | Amended Complaint[29] | 2005 401(k) Plan Prospectus[30] |
|---|---|---|
| STI Classic International Equity Index Fund (I Shares) | 1.12% during Class Period | 1.12% during six-year period ended March 31, 2005 |

---

[27] This, of course, provides an independent basis for considering the Prospectus on a motion to dismiss.  See <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1276 (11th Cir. 1999) ("[W]e approve of the [] practice of judicially noticing relevant documents legally required by and publicly filed with the SEC at the motion to dismiss stage."); see also <u>Hecker</u>, 556 F.3d at 582-83; <u>George v. Kraft Foods Global, Inc.</u>, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009).

[28] Opp. Br. at 19; <u>see also</u> <u>id.</u> at 21 n.8.

[29] <u>See</u> Am. Compl. ¶ 72(a)-(d).

[30] <u>See</u> 401(k) Plan Prospectus at 38-41 (Dkt. No. 18-7), "Financial Highlights" table, "Ratio of Expenses to Average Net Assets (Excluding Waivers and/or Reimbursements)" column.

| Fund Name | Amended Complaint[29] | 2005 401(k) Plan Prospectus[30] |
|---|---|---|
| STI Classic Capital Appreciation Fund (I Shares) | 1.24% during Class Period | 1.24% during six-year period ended March 31, 2005 |
| STI Classic Prime Quality Money Market Fund (I Shares) | .74% to .52% during Class Period | .74% during six-year period ended March 31, 2005 |
| STI Classic Growth and Income Fund (I Shares) [renamed STI Classic Large Cap Relative Value Fund[31]] | .83% to .99% during Class Period | .99% during six-year period ended March 31, 2005 |
| STI Classic Small Cap Growth Fund (I Shares) | 1.19% to 1.24% during Class Period | 1.24% during six-year period ended March 31, 2005 |
| STI Classic Investment Grade Bond Fund (I Shares) | .83% to .57% during Class Period | .83% during six-year period ended March 31, 2005 |
| STI Classic Short-Term Bond Fund (I Shares) | .75% to .46% during Class Period | .75% during six-year period ended March 31, 2005 |
| STI Classic Mid-Cap Equity Fund (I Shares) | 1.25% to 1.02% during Class Period | 1.25% during six-year period ended March 31, 2005 |

---

[31] Am. Compl. ¶ 5.

Moreover, as noted above, the Plan documents also disclosed that the Plan offered participants "I Shares" (a lower-fee class of shares typically reserved for large "institutional" investors), rather than "retail" shares offered to the public.[32] Thus, even if Plaintiffs were correct that the Plan documents provided expense information for "retail" shares offered to the public (and they are not), the disclosure in Plan documents of <u>higher</u> retail fees (compared to the <u>lower</u> "institutional" fees that were actually charged) would hardly advance Plaintiffs' argument that Defendants failed to provide notice of the allegedly excessive fees charged by the STI Classic Funds.

Finally, Plaintiffs' naked assertion that they "dispute the authenticity of [the Plan] documents" because Defendants did not submit an authenticating affidavit is likewise unavailing.[33] Local Rule 7.1 makes clear that an authenticating affidavit is not required where, as here, Defendants have not relied on any "allegations of fact" contained in the attached Plan documents, or made any claim as to the truth of the contents of the documents, such as whether the fee and performance

---

[32] 401(k) Plan Prospectus at 1, 38, 40.

[33] Opp. Br. at 18.

information was accurate.[34]  And Plaintiffs' blanket refusal to concede the Plan documents' authenticity is not the same as actually asserting that they are falsified, altered, or in any way inauthentic.[35]

### B.   Plaintiffs' "two authorities post-dating Fuller" are inapposite.

Plaintiffs contend that the Second Circuit's recent decision in Laboy v. Board of Trustees of Building Service,[36] and in particular its recitation that "allegations of poor results alone do not constitute allegations sufficient to state a claim" for a breach of fiduciary duty under ERISA, somehow support their

---

[34] N.D. Ga. L.R. 7.1.  Indeed, there was no need for such an argument because the Plan documents disclose the exact same expense ratios that Plaintiff alleges in her Amended Complaint caused the STI Classic Funds to be imprudent.

[35] See, e.g., ABN AMRO, Inc. v. Capital Int'l Ltd., No. 04 C 3123, 2007 WL 845046, at *11 (N.D. Ill. Mar. 16, 2007) (considering documents attached to motion to dismiss where "although Plaintiff argue[d] that the agreements are unauthenticated, Plaintiff [did] not assert that they [were] inauthentic"); Ortiz v. Mortgageit, Inc., No. 09cv2103 WQH, 2010 WL 892202, at *4 (S.D. Cal. Mar. 9, 2010) ("Plaintiff references this document [i.e., a document that defendants introduced on a motion to dismiss] in her complaint and does not directly dispute the authenticity of the document.  While Plaintiff contends there is 'a question of fact,' raised by the signed version of the [document] . . . presented by [defendants], she does not contend that it is falsified, altered, or in any way inauthentic.  Plaintiff contends it is 'difficult' to gauge whether the document is authentic, yet is apparently unwilling to assert that it is, in fact, inauthentic subject to the pleading standard of Federal Rule of Civil Procedure 11.  The Court will therefore take judicial notice of the [document] [which defendants] attached.").

[36] No. 12-3401, 2013 WL 811735 (2d Cir. Mar. 6, 2013) (summary order).

11

position here.[37] Simply stated, Laboy confirmed that, in ERISA cases, a bad result is not sufficient to establish a breach of fiduciary duty, and affirmed the dismissal of a complaint for failure to state a claim. The Laboy order does not address ERISA's statute of limitations. Nevertheless, Plaintiffs draw a negative inference from Laboy—that knowledge of the "process the fiduciary employed in selecting the funds" is always required to trigger the three-year limitations period—and suggest that this Court's Fuller decision is therefore incorrect.[38] That is a lot of freight to load on a summary order, like Laboy, which under the Second Circuit's rules, "do[es] not have precedential effect."[39] Plaintiffs' implication, built on an inference, drawn from a non-precedential order, is no substitute for this Court's reasoning that because the Plan documents provided Plaintiffs with actual knowledge of the fees, performance, and affiliation information underlying their claims by "at least by 2005," ERISA's three-year limitations clock ran out long before they filed suit.[40]

---

[37] Opp. Br. at 20 (quoting Laboy, 2013 WL 811735, at *2).
[38] Opp. Br. at 21.
[39] 2d Cir. Rule 32.1.1.
[40] Fuller, Doc. 59, at 25-26.

Plaintiffs also submit as "authority" an *amicus* brief filed by the DOL in Fuller's appeal to the Eleventh Circuit.[41] Plaintiffs correctly acknowledge,[42] however, that the DOL's *amicus* arguments are only due consideration to the extent they have "the power to persuade."[43] But, for the reasons explained above, the DOL's arguments concerning ERISA § 413—which have been squarely rejected in two recent appeals in other Circuits—are not persuasive.[44]

### III. Plaintiffs' Remaining Claims Fail As a Matter of Law.

For their Prohibited Transaction Claim, which is substantively identical to the prohibited transaction claim dismissed in Fuller, Plaintiffs merely "incorporate by reference the rebuttal of this argument" contained in Fuller's briefing.[45] The

---

[41] Opp. Br. at 22.

[42] Opp. Br. at 22-23 n.10 (acknowledging that DOL's arguments are only entitled to Skidmore deference).

[43] Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1279 n.15 (11th Cir. 2012). The DOL is due Chevron deference only when it promulgates regulations interpreting an ambiguous statute that it is charged to administer. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984); see also Gonzales v. Oregon, 546 U.S. 243, 256 (2006). The DOL is due Auer deference when it interprets its own regulation. Auer v. Robbins, 519 U.S. 452, 461-63 (1997); see also Gonzales, 546 U.S. at 255. The DOL has done neither here.

[44] See David, 704 F.3d 327; Tibble, 2013 WL 1174167.

[45] Opp. Br. at 23.

intervening decision in David confirms the correctness of this Court's reasoning.[46] The Court should similarly adopt its ruling from Fuller and dismiss Plaintiffs' substantively identical Prohibited Transaction Claim as untimely.[47]  In addition, ERISA's three-year limitations period independently requires dismissal of the Prohibited Transaction Claim because Plaintiffs were necessarily aware of "the last action which constituted a part of the breach or violation"[48] alleged in their Prohibited Transaction Claim "since at least 2005," which is more than three years before Plaintiffs filed their Complaint.[49]  Plaintiffs' derivative claims (Counts III-V) fail with their time-barred Prudence and Prohibited Transaction Claims, and should be dismissed as well.

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

---

[46] David, 704 F.3d at 341 ("The only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds, which undisputedly occurred [more than six years before the complaint was filed.").

[47] Fuller, Doc. 59, at 15-18.

[48] ERISA § 413(1)(A), 29 U.S.C. § 1113(1)(A).

[49] Fuller, Doc. 59, at 25-26.

Respectfully submitted this 11th day of April, 2013.

                          *s/ Darren A. Shuler*
                          David Tetrick, Jr.
                          Georgia Bar No. 713653
                          Darren A. Shuler
                          Georgia Bar No. 644276
                          Michael B. Wakefield
                          Georgia Bar No. 950517

                          KING & SPALDING LLP
                          1180 Peachtree Street, N.E.
                          Atlanta, Georgia  30309-3531
                          (404) 572-4600
                          (404) 572-5139 (facsimile)
                          dtetrick@kslaw.com
                          dshuler@kslaw.com
                          mwakefield@kslaw.com

                          **Attorneys for Defendants**

## **LR 5.1(C) CERTIFICATE**

I hereby certify, pursuant to LR 5.1(C), that this document was prepared in Times New Roman font, 14-point, in accordance with LR 5.1(C).

This 11th day of April, 2013.

                                                *s/ Darren A. Shuler*
                                                Darren A. Shuler
                                                Georgia Bar No. 644276

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 11, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to the following attorneys of record:

Alan R. Perry , Jr.
Page Perry LLC
Suite 1050
1040 Crown Pointe Parkway
Atlanta, GA 30338

J. Brian McTigue
James A. Moore
McTigue Law, LLP
Suite 300
4530 Wisconsin Avenue, NW
Washington, DC 20016

*s/ Darren A. Shuler*
Darren A. Shuler
Georgia Bar No. 644276