FILED IN CHAMBERS
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT AUG 0 7 2013
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

By: James N. Hatten, Clerk
~~~~~~
Deputy Clerk

SANDRA D. STARGEL, SELETHIA
PRUITT, and *all others
similarly situated*,

        Plaintiffs,

v.

SUNTRUST BANKS, INC.; THE
SUNTRUST BANKS, INC. BENEFITS
PLAN COMMITTEE; RIDGEWORTH
CAPITAL MANAGEMENT, INC.;
JORGE ARRIETA; HAROLD BITLER;
MIMI BREEDEN; MARK CHANCY;
ALSTON D. CORRELL; DAVID
DIERKER; TED HOEPNER; KEN
HOUGHTON; THOMAS KUNTZ; DONNA
LANGE; JOSEPH L. LANIER, JR.;
JEROME LIENHARD; GREGORY
MILLER; THOMAS PANTHER;
WILLIAM O'HALLORAN; LARRY L.
PRINCE; WILLIAM H. ROGERS,
JR.; CHRISTOPHER SHULTS; JOHN
SPIEGEL; MARY STEELE; JOHN AND
JANE DOES 1 TO 20; ALEEM
GILLANI; and THE SUNTRUST
BANKS, INC. BENEFITS FINANCE
COMMITTEE,

        Defendants.

CIVIL ACTION NO.
1:12-CV-3822-ODE

## ORDER

This putative class action alleging violations of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), is currently before the Court on Defendants' Motion for Partial Summary Judgment [Doc. 12], and Defendants' Motion to Dismiss Amended Complaint [Doc. 18]. For the reasons set forth below Defendants' Motion for Partial Summary Judgment [Doc. 12] is GRANTED, and Defendants' Motion to Dismiss Amended Complaint [Doc. 18] is GRANTED.

I.   General Background

On October 31, 2012, Sandra D. Stargel ("Stargel") and Selethia Pruitt ("Pruitt") (collectively "Plaintiffs") filed a Complaint in this Court against Defendants [Doc. 1].[1]   On February 19, 2013, Plaintiffs filed an Amended Complaint [Doc. 16].   The Amended Complaint states:

> This is a civil enforcement action brought pursuant to [ERISA], 29 U.S.C. § 1132(a)(2) & (a)(3), for violations of ERISA's fiduciary duty and prohibited transactions provisions.   It is brought as a class action by [Plaintiffs], participants in the SunTrust Banks,

---

[1]Exhaustion of administrative remedies is required prior to bringing an ERISA breach of fiduciary duty claim.   Springer v. Wal-Mart Assocs. Grp. Health Plan, 908 F.2d 897, 899 (11th Cir. 1990).   On April 24, 2008, non-party Mary E. Lee ("Lee") submitted a claim alleging breach of fiduciary duty and prohibited transactions on behalf of the Plan to the 401(k) Plan Administrator, for the period beginning April 25, 2002 [Doc. 16 ¶ 98].   Lee's administrative claim was denied August 29, 2008. Her administrative appeal was initiated November 26, 2008 and denied March 26, 2009 [Id. ¶ 100].

Defendants appear to concede for purposes of the instant motion to dismiss that Plaintiffs' claims in this case are within the group of claims addressed in the administrative process. Also, "[s]olely for the purposes of Rule 12(b)(6), Defendants do not contest that Plaintiffs are entitled to these 336 days of tolling arising from Lee's Exhaustion of her administrative remedies" [Doc. 18-1 at 13].   The 336 days represents the time between when Lee submitted her claim (April 24, 2008), and when her administrative appeal was denied (March 26, 2009).

Relatedly, Defendants have also conceded, for purposes of their motion to dismiss, that the appropriate operative date is not October 31, 2012, the day Plaintiffs filed their Complaint. Rather, the operative date is March 11, 2011, the day the complaint was filed in Fuller v. SunTrust Banks, Inc., No. 1:11-CV-784-ODE, a factually similar case that was previously before this Court [see Doc. 18-1 at 18; see also infra Part III.B.1 (discussing the Fuller case)].

Taking into account these concessions, all claims arising before April 10, 2004 (six years and 336 days preceding March 11, 2011) are untimely based on ERISA's statute of limitations [see infra (discussing ERISA's six-year statute of repose)].

Inc. 401(k) Plan . . . on behalf of the 401(k) Plan and all similarly situated Plan participants and beneficiaries . . ., and all predecessor plans.

[Doc. 16 ¶ 1].

The Amended Complaint and certain documents described below[2] show the following:  SunTrust Banks, Inc. ("SunTrust") maintains a § 401(k) investment program for its employees [Doc. 16 ¶ 61]. Under § 401(k) of the Internal Revenue Code, investments have tax advantaged status.  Employees contribute via payroll deduction the amounts they wish to invest and select investments from a menu of choices.  The terms of the program are set out in a written plan ("Plan").  The Plan is an employee stock ownership plan designed for investment primarily in company stock.  At relevant times the Plan offered a variety of investment vehicles, including: shares in the SunTrust Common Stock Fund, unitized shares in eight proprietary mutual funds called the STI Classic Funds, and also certain offerings unaffiliated with SunTrust, namely the Bernstein International Portfolio Fund ("SIMTX"), the Dreyfus Premier Small Cap Value Fund ("DSVRX"), the Lazard Mid Cap Core Fund ("LZMIX"), and the Dodge & Cox Balanced Fund ("DODBX") [see Doc. 16 ¶ 41; Doc. 18-5 at 11-13].  Employees had their choice of investing in any one or more of them.  Plaintiffs' Amended Complaint focuses on the eight proprietary mutual funds known as the STI Classic Funds.[3]  Seven of these funds were first offered in or before

---

[2]These documents are the SunTrust Banks Inc. 401(k) Plan Amended and Restated Effective January 1, 2006, the Plan's Summary Plan Description and the Plan Prospectus of August 1, 2005, discussed infra Part III.B.2.

[3]The Amended Complaint refers to these funds collectively as the "Affiliated Funds."  This Order will refer to them as the "STI

3

2002, well outside ERISA's six year period of limitations even when applicable tolling periods are factored in [see supra note 1].

SunTrust is the Plan sponsor and is a named fiduciary in the Plan [Id. ¶ 18].   The SunTrust Inc. Benefits Plan Committee and the SunTrust Banks Inc. Benefits Finance Committee and their respective members (the individual Defendants) (the "Committee Defendants") are named fiduciaries of the Plan who had responsibility for selecting investment options for the Plan.[4] Both of the committees and their individual members are collectively called the Committee Defendants in the Amended Complaint.   According to the Amended Complaint, Defendant RidgeWorth Capital Management, Inc. ("RidgeWorth") is "a SunTrust subsidiary and an investment advisor registered with the SEC" [Id. ¶ 27].[5]   RidgeWorth is the advisor to the STI Classic Funds.

---

Classic Funds."   The eight funds were: the STI Classic Capital Appreciation Fund; the STI Classic Small Cap Growth Fund; the STI Classic Growth and Income Fund; the STI Classic Mid-Cap Equity Fund; the STI Classic Investment Grade Bond Fund; the STI Classic Short-Term Bond Fund; the STI Classic Prime Quality Money Market Fund; and the STI Classic International Equity Index Fund [Doc. 16 ¶ 5].

[4]According to the Amended Complaint, the SunTrust Banks Inc. Benefits Finance Committee took over the responsibility for determining Plan investment options on July 1, 2011 [Doc. 16 at 4-5 n.1].

[5]According to the Amended Complaint, Trusco Capital Management, Inc. was investment advisor to the STI Classic Funds until 2008 and was succeeded by RidgeWorth [Doc. 16 ¶ 27].   The Amended Complaint alleges that both of these entities were subsidiaries of SunTrust at relevant times [Id. ¶¶ 27, 38].

The Amended Complaint alleges that ERISA violations occurred between April 10, 2004 and December 31, 2012 (the designated "Class Period") [Doc. 16 ¶ 7].  During this time the Committee Defendants failed to remove the STI Classic Funds from the choice of investments.  No class has been certified.

According to the Amended Complaint, Plaintiffs Stargel and Pruitt are former employees of SunTrust [Id. ¶¶ 13, 15].  Stargel was invested in two of the STI Classic Funds beginning by at least April 10, 2004, until December 26, 2007, and in a third fund from 2005 until December 26, 2007, when she left SunTrust's employ [Id. ¶ 13].[6]  Pruitt invested in two of the STI Classic Funds beginning by at least April 10, 2004, until she retired in October 2010 [Id. ¶ 15].[7]

The Amended Complaint [Doc. 16] includes the following causes of action: (Count I) the Committee Defendants breached duties of prudence and loyalty by failing to remove or replace the STI Classic Funds as 401(k) Plan investment vehicles, in violation of 29 U.S.C. § 1104; (Count II) the Committee Defendants breached duties of prudence and loyalty by selecting the STI Classic International Equity Index Fund as an investment fund for the 401(k) Plan, in violation of 29 U.S.C. § 1104; and (Count VI) the Committee Defendants engaged in prohibited transactions by causing

---

[6]These funds were the STI Classic Small Cap Growth Fund (first offered in 1997), the STI Classic Mid-Cap Equity Fund (first offered in 2002), and the STI Classic International Equity Index Fund (first offered in 2005).

[7]These funds were the STI Classic Investment Grade Bond Fund (first offered in 1997) and the STI Prime Quality Money Market Fund (first offered in 1997).

the 401(k) Plan to invest in the STI Classic Funds, in violation of 29 U.S.C. § 1106 [id. at 2-3]. The remaining counts of the Amended Complaint--Counts III, IV and V--are derivative claims whose viability depends on the viability of Counts I, II and VI. The derivative claims are discussed later in this Order [see infra Part III.B.5].

On January 25, 2013, Defendants filed a Motion for Partial Summary Judgment [Doc. 12]. Defendants later filed a Motion to Dismiss Amended Complaint [Doc. 18]. Both Motions have been fully briefed. On July 9, 2013, the Court held a hearing on Defendants' Motion to Dismiss.

II.   Motion for Partial Summary Judgment

Defendants' Motion for Partial Summary Judgment argues that all of Plaintiff Stargel's claims in the Amended Complaint are barred by the terms of a Confidential Settlement Agreement and Release (the "Release") which Stargel executed on June 24, 2010. The Court will address this Motion before turning to Defendants' Motion to Dismiss.

**A.   Facts**

The Affidavit of Clint Efird (Vice President, Total Rewards Analyst, for SunTrust) [Doc. 12-3] sets forth the following facts: Stargel was employed by SunTrust Banks, Inc., its subsidiaries, affiliates, or predecessors, until her employment terminated on November 7, 2007 [Id. ¶ 6]. During her employment, Stargel participated in the 401(k) Plan [Id. ¶ 7]. On or about December 26, 2007, Stargel received a lump sum distribution (consisting of her entire account balance) from the Plan [Id.]. As a result of this final distribution, Stargel's individual Plan

6

account was closed [Id.]. Stargel has not held any investment in the Plan since she received the final distribution on December 26, 2007 [Id.]. As a former employee, Stargel is no longer eligible to participate in the Plan [Id.].[8]

According to the Affidavit of Lori S. Thomas, Senior Employment Counsel for SunTrust [Doc. 12-2]: "On June 24, 2010, Sandra D. Stargel . . . entered into a Confidential Settlement Agreement and Release with SunTrust Bank (a wholly owned subsidiary of SunTrust Banks, Inc.) and certain individuals affiliated with SunTrust" [Id. ¶ 5]. Thomas' Affidavit identifies the Release Stargel signed, and a copy of the Release is attached to the affidavit [Doc. 12-2 at 5-12]. Stargel does not dispute the facts contained in either affidavit or the identification of the Release.

According to the Release itself, it was executed upon settlement of a lawsuit Stargel had filed against SunTrust on November 18, 2007, shortly after her employment ended. The suit sought damages stemming from the alleged commission of certain state law torts.

The Release is lengthy. The pertinent portions are the following:

> § 2.1  As a material inducement for SunTrust and the Individual Defendants to enter into this Agreement, Stargel, for herself and for her heirs, predecessors, successors, representatives, and attorneys, hereby fully, finally, irrevocably, and unconditionally releases and forever discharges SunTrust, the Individual

---

[8]Stargel admits this fact "for the purposes of this motion" but "object[s], however, that eligibility is a question of law" [Doc. 19-2 ¶ 6].

7

Defendants, and all of the other Released Parties[9] of and from all Claims[10] that Stargel now has, may have had, or may hereafter claim to have, arising out of, related to, or connected with, in any way, acts, events, or facts done or occurring from the beginning of time through the Effective Date,[11] including, without limitation:

> § 2.1.1 [c]laims under . . . the Employee Retirement Income Security Act (29 U.S.C. § 1001 et seq.)[;] . . . [and]

> § 2.1.3 [c]laims under any SunTrust employee benefit plan, other than Claims related to Stargel's entitlement to receive any vested benefits earned under any such plan . . . .

§ 2.2 Stargel acknowledges and agrees that this Release shall be interpreted in the broadest possible manner in favor of SunTrust, the Individual Defendants, and all of the other Released Parties.

§ 2.3 Stargel covenants, warrants, and agrees that she will not institute, encourage, or join in as a class member or otherwise, any administrative, arbitration, equitable, legal, or other proceeding against SunTrust, the Individual Defendants, or any of the other the [sic] Released Parties involving any of the Claims released by this Agreement. . . .

. . . .

---

[9]"'Released Parties' means the Individual Defendants, SunTrust Bank, SunTrust Banks, Inc., and their respective predecessors, successors, parent corporations, subsidiaries, affiliates, directors, officers, agents, representatives, employees, assigns, and attorneys" [Doc. 12-2 at 10].

[10]Section 8.1 of the Release defines "Claims" as "any and all causes of action, charges, claims, or complaints, whether known or unknown, that could be brought before any Governmental Authority; provided, however, that Claims shall not include workers' compensation claims, claims for unemployment insurance benefits, or claims under the Fair Labor Standards Act" [Doc. 12-2 at 9-10].

[11]The Release provides that "[t]his Agreement shall become valid and enforceable against Stargel as to all Claims, as soon as she signs it" [Doc. 12-2 at 9]. Stargel signed the Release on June 24, 2010.

§ 2.7 Nothing in this Agreement shall be construed as a waiver of Stargel's right to any vested employee benefit, including vested amounts accrued in her 401(k), pension, and retirement accounts, which rights shall be governed by the terms of the applicable plan.

[Doc. 12-2 at 6-7].

### B. Legal Standard

The Court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing the record, the district court must construe the facts and make all reasonable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

### C. Discussion

Stargel argues her claims are viable, despite the Release, for two reasons: (1) the Release expressly excludes Stargel's claims from its scope; she is bringing claims for "vested benefits" which are excluded from the operation of the Release under § 2.1.3; and (2) she only released her individual claims; here she is bringing claims on behalf of the Plan, which were not released [Doc. 19 at 8].

In response to Stargel's first argument, Defendants contend that Stargel is not bringing claims for vested benefits; in addition, her interpretation of the Release would make meaningless the Release's broad release of her ERISA claims. Defendants further explain that:

> If, as Stargel contends, the carve out for vested benefit claims, which arises under ERISA § 502(a)(1)(B), also excludes the breach of fiduciary duty claims that Stargel purports to bring under § 502(a)(2) and (a)(3) in this action, then the Release covers no ERISA claims. After all, subsections (a)(1), (a)(2), and (a)(3) are the only avenues of relief that a participant may pursue under the "carefully integrated civil enforcement provisions found in ERISA § 502(a)." The exception (the narrow carve out for vested benefit claims) would truly swallow the rule (the broad release of all other ERISA claims).
>
> Stargel's Release, read as a whole, is clear and unambiguous. It expressly states that Stargel released "all Claims under [ERISA], and Claims under any SunTrust employee benefit plan." The carve out for "Claims related to Stargel's entitlement to receive any vested benefits earned under any SunTrust employee benefit plan" merely preserves Stargel's right to the benefits she was entitled to under the terms of SunTrust's employee benefit plans at the time she signed the Release. It does not and cannot reasonably be read to preserve Stargel's right to pursue breach of fiduciary duty claims under § 502(a)(2) and (a)(3). This interpretation "gives a reasonable meaning to all parts of the contract" and, therefore, must "be preferred to one like Stargel's that leaves portions meaningless."

[_Id._ at 3-4 (internal citations, alterations, and footnotes omitted)].

Defendants are correct. Stargel's claim that she brought this case to recover "vested benefits", but not to make claims under ERISA, is meritless. The Amended Complaint does not contain a cause of action to recover lost benefits, vested or otherwise.

Stargel did not bring her claims under § 502(a)(1)(B)[12]; rather she and Pruitt brought suit only under § 502(a)(2) and (3)[13] [see Doc. 16 ¶¶ 1, 111, 137]. Also, the Court agrees with Defendants that Stargel's broad interpretation of the carveout provision would render large portions of the Release meaningless, and thus goes against the rules of contract interpretation. JOHN K. LARKINS, JR., GEORGIA CONTRACTS: LAW AND LITIGATION § 9:2 (2d ed. 2012) ("A contract should be interpreted so as to give effect to all provisions, rather than to leave any part of the contract unreasonable, ineffective or meaningless." (citing Young v. Stump, 294 Ga. App. 351 (2008))). The United States Court of Appeals for the Seventh Circuit found likewise in Howell v. Motorola, Inc., 633 F.3d 552 (7th Cir. 2011).

In Howell, Howell signed a release that provided in part:

> I hereby unconditionally and irrevocably release, waive and forever discharge Motorola, Inc. and its affiliates, parents, successors, subsidiaries, directors, officers, and employees, from ANY and ALL causes of action, claims and damages, including attorneys fees, whether known or unknown, foreseen or unforeseen, presently asserted or

---

[12]ERISA does provide a cause of action for a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). However, this cause of action is not pleaded in the Amended Complaint.

[13]These sections of ERISA allow a civil action to be brought by "the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title" and "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(2) and (3).

> otherwise, which have or could have arisen to date out
> of my employment or separation from employment. This
> General Release ("Release") includes, but is not limited
> to, any claim or entitlement to pay, benefits or damages
> arising under any federal law (*including but not limited
> to ... the Employee Retirement Income Security Act ...*);
> any claim arising under [any other law], or under
> Motorola's personnel policies. *I understand by signing
> this Release I am not releasing any claims for benefits
> under the Motorola employee benefits plan*. Nor am I
> waiving any other claims or rights which cannot be
> waived by law. . . .

Id. at 558 (emphasis added).  The issue before the Seventh Circuit
was whether "a lawsuit complaining about a breach of fiduciary
duty under ERISA can still be a 'claim for benefits.'" Id. at 559.
The Seventh Circuit ultimately found that the two exceptions in
the release did not apply to Howell's claims.  The court reasoned,
based on contract interpretation, that:

> [U]nder the release, Howell ha[d] waived the right to
> bring a lawsuit challenging the Plan as a whole . . . .
> In short, as a contractual matter . . . Howell remains
> entitled to sue to recover the money that was in his
> retirement account at the time he signed the release,
> but he cannot now claim that his account would have been
> worth even more had the defendants not breached a
> fiduciary duty.

Id. at 561.  Here, like in Howell, the contract makes it clear
that Stargel has waived her right to raise the claim she asserts
in this case.[14]

In response to Stargel's argument that the Release does not
extinguish her right to bring a case on behalf of the Plan,
Defendants point to § 2.3 in which she "[covenanted, warranted,
and agreed] that she will not institute, encourage, or join in as

---

[14]While Stargel relies on Lanfear v. Home Depot, Inc., 536
F.3d 1217 (11th Cir. 2008), this case is not on point.  Lanfear
did not involve a release or agreement limiting claims to those
seeking vested benefits.

a class member or otherwise, any legal, or other proceeding against SunTrust or the other Defendants involving any of the Claims released by this Agreement" [Doc. 12-2 at 7].

Defendants are correct.  The terms of the Release are simply unambiguous--Stargel cannot institute or join in the action before the Court.  See JOHN K. LARKINS, JR., GEORGIA CONTRACTS: LAW AND LITIGATION § 9:1 (2d ed. 2012) ("[I]f no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical and arbitrary rules of construction.").  Furthermore, and as with Stargel's vested benefit argument, if the Court were to adopt her interpretation, large portions of the Release would be rendered meaningless (i.e., it is unclear what ERISA claims the Release would bar).  Therefore, based on the language of the Release, Stargel has released the claims she now seeks to assert. As a result, her claims fail as a matter of law, and Defendants' Motion for Partial Summary Judgment [Doc. 12] as to all of her claims is due to be granted.

III. Motion to Dismiss

Defendants also move to dismiss Pruitt's[15] claims, including Counts I, II, and VI of the Amended Complaint, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants argue that Pruitt's claims in Counts I and VI are barred by both of ERISA's periods of limitation (six years and three years) as set forth in 29 U.S.C. § 1113.  They contend she has no standing to bring a breach of fiduciary duty claim as to

---

[15]The Court will not address Defendants' motion to dismiss Stargel's claims in Counts I, II, and VI as these claims are no longer actionable.

13

Count II because the Complaint does not allege that she ever owned shares in the STI Classic International Equity Fund.

### A. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on the pending Motion to Dismiss, all of the well-pleaded factual allegations in the plaintiff's complaint must be accepted as true and construed in the light most favorable to the plaintiff. Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008).

To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, must be enough to raise a right to relief above the speculative level." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009) (citation and internal quotation marks omitted).

While plaintiffs are not required to negate an affirmative defense in their complaint, an affirmative defense can serve as a basis for dismissal under Rule 12(b)(6). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Trans. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1194 (11th Cir. 2008) (citations and internal quotation marks omitted).

14

**B.   *Discussion***

### 1.   Count I Breach of Fiduciary Duty for Failing to Remove Funds--Six Year Period of Limitations

The gravamen of Pruitt's claim in Count I is that the Committee Defendants should have removed the STI Classic Funds as investment options during the Class Period because they offered "poor performance and high fees" [e.g., Doc. 16 ¶ 3]. The Amended Complaint attributes the "high fees" to the fact that the Funds' advisors were corporate affiliates of SunTrust--hence, they allegedly were able to charge and did charge excessive advisory fees to the Funds; the Funds paid the fees and this diminished returns to participants' Plan accounts [Id.]. The legal theory of Count I is breach of fiduciary duty under ERISA, 29 U.S.C. § 1104.

ERISA's statute of limitations bars actions brought either:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Defendants rely on the averments of the Amended Complaint to support their argument that this claim is barred by the six year period of limitations.   Potentially significant allegations are that the two funds in which Pruitt invested (the STI Classic Investment Grade Bond Fund and the STI Prime Quality Money Market Fund) were first selected and offered in 1997 [Doc. 16 ¶ 61];

15

also, Pruitt owned shares in them between April 10, 2004 and October 2010 [Id. ¶ 15].

Count I alleges in substance that the initial selection of the STI Classic Funds was imprudent; the Funds offered poor performance and high fees but were selected in order to benefit the Funds' advisor, a SunTrust subsidiary.  In later years, the Committee Defendants continually failed to remove the Funds from the menu of investment options despite their continuing poor performance and high fees.  The following paragraphs of the Amended Complaint [Doc. 16] demonstrate this:

### Nature of the Action
\* \* \*

3.  Committee Defendants, rather than fulfilling their fiduciary duties (the "highest duties known to the law"), which call for prudent investments at reasonable cost, selected for the Plan and repeatedly failed to remove or replace proprietary mutual funds managed and offered by SunTrust affiliates.  These funds were not selected by an impartial or prudent process, but were instead selected because those SunTrust affiliates would benefit financially if 401(k) Plan assets were invested with them.  These funds offered poor performance and high fees compared to numerous other available investment vehicles, including mutual funds offered by The Vanguard Group, Inc. ("Vanguard"), and separately managed accounts and collective trusts managed by investment advisors, which SunTrust itself employed in its defined benefit plan, the SunTrust Bank, Inc. Retirement Plan ("Pension Plan")   [footnote omitted]. . . .  By choosing proprietary investment funds for the 401(k) Plan, Committee Defendants enriched SunTrust and its affiliates at the expense of 401(k) Plan participants, and disregarded the participants' interests in having low-cost good performing investment funds.

\* \* \*

### Defendants Breached Their Duties to the Plan by Causing the Plan to Invest in the Affiliated Funds
\* \* \*

59. The Plan Committee met four or more times per year, and met 33 times during a portion of the Class Period, between April 10, 2004 and March 25, 2008.

60. Periodically, at Plan Committee meetings, the performance of 401(k) Plan investments was reviewed, and

the reasonableness of the expenses charged by these funds was also reviewed, though less frequently. Despite the high fees and poor performance of the Affiliated Funds, Committee Defendants failed to remove or replace any of the Affiliated Funds as Plan investment options at any of their meetings prior to the inception of this litigation.

61. Proprietary SunTrust mutual funds were first added as investment options in the 401(k) Plan effective July 1, 1997. Prior to that, on information and belief, lower cost collective trusts and/or separate accounts were offered as investment options. Effective dates for the Committee Defendants' selection of the Affiliated Funds as investment options in the 401(k) Plan are as follows. Effective July 1, 1997: the STI Classic Capital Appreciation Fund (then known as the Capital Growth Fund), the STI Classic Investment Grade Bond Fund, the STI Classic Short-Term Bond Fund, and the STI Classic Prime Quality Money Market Fund. Effective 1999: the STI Classic Small Cap Growth Fund and the STI Classic Growth and Income Fund. Effective 2002: SunTrust Mid-Cap Equity Fund. Effective 2005: STI Classic International Equity Index Fund.

\* \* \*

64. On information and belief, when Committee Defendants initially selected the Affiliated Funds, they were not selected via a prudent process. There was no or insufficient consideration of alternatives or review of the performance and reasonableness of the Affiliated Funds. Because of this, the fact that the Affiliated Funds were currently in the Plan should have been given no weight in deciding whether to remove or replace them.

65. All Committee Defendants knew or should have known the Affiliated Funds were not prudently selected.

\* \* \*

## Count I

105. All previous averments are incorporated herein.

\* \* \*

107. Committee Defendants, by their actions and omissions in repeatedly failing to remove or replace the Affiliated Funds, which offered poor performance and high fees, as investment options in the Plan during the Class Period breached their duties of prudence and loyalty under ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B). The fact that the Plan's investments in fee-generating managed funds were concentrated in funds managed by SunTrust subsidiaries and affiliates reflects a failure to consider and obtain less expensive and better performing alternative, unaffiliated funds and services at the expense and to the detriment of the Plan and to the benefit of SunTrust subsidiaries and affiliates.

108. Committee Defendants also knew or should have known that the Affiliated Funds had not been prudently selected to begin with.

109. Committee Defendants committed these breaches during each of the Committee meetings that occurred periodically during each year of the Class Period. At each of these meetings, the Committee Defendants had cause to remove the Affiliated Funds based on their poor performance and high fees, but failed to do so.

Nowhere does the Amended Complaint assert that the STI Classic Funds or any of them performed worse in the Class Period than previously, that the fees were higher than previously, or that a new conflict of interest arose. Furthermore, the "breaches" referenced in paragraph 109 are only explained by an unspecific reference to the Committee Defendants' failure to remove the Funds at periodic meetings. The Amended Complaint criticizes the process employed in Committee meetings in discussing the Funds [see Doc. 16 ¶ 71], and gives examples of alleged high fees and high expense ratios [see Doc. 16 ¶ 72], which prevailed during the Class Period.[15] But it recites no facts which, if proven, would establish a new, independent breach of fiduciary duty which is different from the original time-barred breach. There is simply no allegation that anything changed after selection of the STI Classic Funds. There is no allegation which asserts a drop in performance or a rise in advisory fees during the Class Period. Accordingly, any argument that a new breach of fiduciary duty occurred during the class period is based on pure speculation, which is insufficient. See Ashcroft v. Iqbal, 556

---

[15]These examples, however, are modified by a footnote which says in part: "Plaintiff currently lacks comprehensive information regarding the fees and performance of the versions actually offered in the 401(k) Plan" [Doc. 16 at 45 n.5.]

U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." (internal alterations and citations omitted)).

This Court evaluated the application of ERISA's six year period of limitations in a prior ERISA case, <u>Barbara J. Fuller v. SunTrust Banks, Inc. et al.</u>, Civil Action No. 1:11-CV-784-ODE, in 2012. In its decision on March 20, 2012, this Court denied Defendants' motion to dismiss Plaintiff Fuller's claim of breach of prudence and loyalty based on practically the same allegations as are presented in the instant case. Plaintiff Fuller was a participant in the same SunTrust 401(k) plan as Plaintiffs Stargel and Pruitt. The causes of action are numbered in a different sequence and Count VII (Breach of Fiduciary Duties of Loyalty and Prudence by Mapping the NCF 401(k) Plan) is not included in the instant complaint as it was in <u>Fuller</u>. However, the phraseology of the allegations pertinent to the breach of duties of prudence and loyalty claims is quite similar. After considering the averments of the Amended Complaint this Court, citing <u>Morrissey v. Curran</u>, 567 F.2d 546, 548-49 n.9 (2d Cir. 1977) and a number of district court decisions from outside the Eleventh Circuit, denied Defendants' motion to dismiss based on the expiration of the six-year period of limitation and said: "Courts have widely recognized

19

an ERISA fiduciary's ongoing duty to monitor investments and remove investments that are no longer viable" [<u>Fuller</u>, Doc. 59 at 23].

Pruitt urges that this Court's decision in <u>Fuller</u> was legally correct and that it should be followed in the instant case. Defendants disagree.  After thorough consideration and with the benefit of oral argument, the Court has changed its mind and reverses course.  Recently two appellate decisions have made opposite rulings from the ruling in <u>Fuller</u>.  These cases are <u>Tibble v. Edison International</u>, 2013 U.S. App. Lexis 16050 (9th Cir. Aug. 1, 2013) and <u>David v. Alphin</u>, 704 F.3d 327 (4th Cir. 2013).  Neither of these cases was decided on a motion to dismiss in the trial court; however, certain of their holdings are on point and favor Defendants' position.  <u>Tibble</u> held that the six-year period would start running with the act of designating the investment for inclusion in the plan menu; merely continuing the offering did not constitute a new cause of action so as to avoid the six-year bar.  The <u>Tibble</u> court, which affirmed a judgment in the trial court, observed that the plaintiffs' logic

> confuse[s] the failure to *remedy* the alleged breach of an obligation[] with the commission of an alleged *second* breach, which, as an overt act of its own recommences the limitations period.  Characterizing the mere continued offering of a plan option, without more, as a subsequent breach would render section 413(1)(A) "meaningless and [could even] expose present Plan fiduciaries to liability for decisions made by their predecessors--decisions which may have been made decades before and as to which institutional memory may no longer exist."

<u>Tibble</u>, 2013 U.S. App. Lexis at *10-11 (quoting <u>David</u>, 817 F. Supp. 2d 764, 777 (W.D.N.C. 2011), <u>aff'd</u> 704 F.3d 327 (4th Cir.

2013); other internal quotation marks and citations omitted).   The
Tibble court went on to explain:

> As with the application of any statute of limitations,
> we recognize that injustices can be imagined, but
> section 413(1) "suggests a judgment by Congress that
> when six years has passed after a breach or violation,
> and no fraud or concealment occurs, the value of repose
> will trump other interests, such as a plaintiff's right
> to seek a remedy."

Id. at *11 (citation omitted).

In the David case, the United States Court of Appeals for the
Fourth Circuit affirmed the trial court's grant of summary
judgment to fiduciaries who made investment decisions for Bank of
America's 401(k) plan.  As in this case, plaintiffs claimed that
members of the plan's benefits committee breached their fiduciary
duty by investing in certain bank affiliated funds outside the six
year period of limitations; they failed to remove the funds
subsequently within the period of limitations.   The Court of
Appeals noted:

> As the district court held, Appellants have not
> claimed that the bank-affiliated funds *became* imprudent,
> based on fund performance or increased fees, during the
> limitations period.   Rather, the TAC [(third amended
> complaint)] alleges that the affiliated funds "offered
> poor performance and high fees," and that at each
> Committee meeting during the Removal Class Period,
> Appellees "had cause to remove the Affiliated Funds
> based on their poor performance and high fees, but
> failed to do so."   The TAC makes clear that the
> challenge to the prudence of the funds which underlies
> Count II is based on attributes of the funds that
> existed at the time of their initial selection--their
> alleged poor performance and high fees relative to
> alternative available fund options.   Thus, the claim is
> not truly one of a failure to remove an imprudent
> investment.   It is, at its core, simply another
> challenge to the initial selection of the funds to begin
> with.   Again, as the initial selection of the Bank-
> affiliated funds undisputedly occurred in 1999, this
> claim is time-barred.

David, 704 F.3d at 341 (citations omitted).

21

The only Court of Appeals case which is arguably contrary to the decisions in Tibble and David is the Morrissey case which this Court cited in Fuller. In a 1977 opinion, the United States Court of Appeals for the Second Circuit reversed a district court decision which dismissed an ERISA complaint for lack of jurisdiction. Morrissey v. Curran, 567 F.2d 546, 547 (2d Cir. 1977). Apparently, the defendant as trustee for a labor organization's pension and welfare plan had made a troubled investment in Panama. At the time of the investment, ERISA had not yet been enacted. After the date of ERISA's enactment, the defendant-trustee continued to retain the investment, allegedly in violation of ERISA's duty of prudence. The district court held that it had no jurisdiction over the claim because the wrongdoing had occurred before ERISA was enacted. Id. at 547-48.

In reversing, the Second Circuit Court of Appeals held in part: "We have no doubt that under the 'prudent man' rule, which is codified in ERISA, the trustees here had a duty within a reasonable time after ERISA took effect to dispose of any part of the trust estate which would be improper to keep." Id. at 548-49 (footnotes 8 & 9 omitted). Morrissey has not been overruled, and apparently is still good law in the Second Circuit. However, Morrissey was decided almost 36 years ago and on its facts is less similar to the instant case than Tibble and David. Morrissey does not specifically involve the statute of limitations.

In Fuller, this Court also quoted from Harley v. Minnesota Mining & Manufacturing Co., 42 F. Supp. 2d 898, 906 (D. Minn. 1999) for this proposition: "Once the investment is made, a fiduciary has an ongoing duty to monitor investments with

22

reasonable diligence and remove plan assets from an investment that is improper." [Fuller, Doc. 59 at 23].

Pruitt's Amended Complaint in the instant case clearly alleges that the various STI Classic Funds were imprudent when initially offered on account of poor performance, high fees, and an alleged of conflict of interest. It then goes on to allege that the poor performance and high fees and conflict of interest continued during the Class Period. The Committee Defendants met many times to consider the investment menu; they could and should have removed the funds. The Amended Complaint asserts that the "high fees" came from the alleged failure of the Plan to offer participants so-called "institutional shares" rather than "retail" shares which may entail higher advisory fees. Regarding the allegation of "poor performance," the Complaint asserts that the amount of advisory fees charged diminishes a Plan participant's return on a particular investment, and thus has a negative effect on its performance. To that extent, again the Amended Complaint suggests a continuing course of conduct during the Class Period which is no different from that accompanying the original selection of the funds. It is important that the Amended Complaint does not say that the funds' performance materially declined during the Class Period, or that performance declined at all. It does not say that advisory fees materially increased or that they increased at all. Again, Pruitt's allegations that new breaches of fiduciary duty occurred during the Class Period do not rise above the level of speculation.

This Court does not retreat from the statement in Fuller that the Committee Defendants had an ongoing duty to monitor the Plan's

offerings to determine whether any of them should be removed. However, this does not relieve Pruitt of the obligation to plead a discrete breach of fiduciary duty within the six year period of limitations.

Taken altogether, the lack of prudence claim in this case is most similar to the lack of prudence claims described in David v. Alphin and Tibble v. Edison International. This Court is persuaded by the reasoning of those cases, and finds on review of the Amended Complaint in this case that Pruitt's prudence and loyalty claim in Count I of the Complaint should be dismissed as untimely under ERISA's six-year period of limitations.

> 2.  Count I Breach of Fiduciary Duty Claim--Three Year Period of Limitations

ERISA bars actions brought "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2).

Defendants rely on "Plan Documents" submitted with their motion to dismiss to show that Pruitt had actual knowledge of the alleged violations since at least 2005. These documents are: (1) SunTrust Banks, Inc. 401(k) Plan Amended and Restated Effective January 1, 2006 ("2006 Plan"), attached as Exhibit A [Docs. 18-2 through 18-4]; (2) Summary Plan Description ("SPD"), attached as Exhibit B [Doc. 18-5][16]; (3) 2005 Fourth Quarter Quarterly

---

[16]The SPD is contained in the SunTrust Employee Benefits Handbook (here the 2005 version), and provides the salient features of SunTrust's program. ERISA requires employers to furnish a plan summary to participating employees. See 29 U.S.C. §§ 1022, 1024.

The SPD contains a description of the seventeen various investment options offered by the Plan, describing the objectives

Investment Performance Booklet ("QIP"), attached as Exhibit C [Doc. 18-6][17]; and (4) 401(k) Plan Prospectus for 2005 ("Plan Prospectus"), attached as Exhibit D [Doc. 18-7].[18]

Pruitt initially argues that the Court should not consider these documents as they have not been authenticated. When resolving a motion to dismiss pursuant to 12(b)(6), "the Court is typically constrained to look only to the pleadings and exhibits incorporated therein." Woods v. Southern Co., 396 F. Supp. 2d 1351, 1359 (N.D. Ga. 2005) (Story, J.). The United States Court of Appeals for the Eleventh Circuit has permitted the Court to consider a document attached to a motion to dismiss, and any

---

of each and the share price volatility of each, ranging from low to high [Doc. 18-5 at 11-13]. The SPD refers the reader to the Quarterly Investment Performance booklet, which is updated quarterly, and which provides quarterly results for each investment option. The SPD notes that the QIP booklet is available online at "www.benefitsweb.com/SunTrust.html (choose 401(k) plan, click on Fund Information, then on Fund Performance, then Quarterly Investment Performance)" [Id. at 13].

[17]The QIP offers very detailed information concerning the various investment options offered by the Plan. It analyzes the performance of each investment option over the relevant quarter and preceding years [see generally Doc. 18-6]. It states the expense ratio for each investment. The QIP states that the "STI Classic Funds are advised by affiliates of SunTrust" [Id. at 39]. This document also tells participants how they can obtain a plan prospectus [Id. at 3, 8].

[18]This Plan Prospectus is subtitled "STI Classic Funds for the SunTrust 401(k) Plan August 1, 2005" [Doc. 18-7]. The Plan Prospectus identifies Trusco as the investment advisor to the Funds [Doc. 18-7 at 32, 48]. It provides expense ratios for each investment (e.g., .57% for the STI Classic Investment Grade Bond Fund and .58% for the STI Classic Prime Quality Money Market Fund [Id. at 24, 29]). It also explains that the expense ratio is calculated based on the relationship between the fees charged and the amount of the respective fund's average daily net assets [Id. at 29].

responses thereto, "but only where the attached document is 'central to the plaintiff's claim' and is 'undisputed' in the sense that 'the authenticity of the document is not challenged.'" Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). The requirement that the document be central to the claim has been interpreted broadly.  Id. at 1372 n.11.

As for centrality, it is clear that this requirement is met here.  In the Amended Complaint, Pruitt refers to the Plan Documents on numerous occasions [e.g., Doc. 16 ¶ 10 ("The allegations in this complaint are based upon counsel's investigation of public documents, including filings with the U.S. Department of Labor and U.S. Securities and Exchange Commission, documents provided to Plaintiffs because of their status as Plan participants, and documents provided by Defendants in the course of exhaustion of administrative remedies . . . ."); Id. ¶ 43 ("The 401(k) Plan's Summary Plan Description, which is participants' principal source of information regarding the Plan . . . .")]. Moreover, some of the statistics cited in the Amended Complaint are the same as those set forth in the Plan Documents [e.g., compare Doc. 16 ¶ 72(a)-(d), with Doc. 18-7 at 41-44]. Accordingly, there is no doubt that the documents are central to Pruitt's claims.

As for the authenticity requirement, Pruitt's only specific comment is that "for all Plaintiffs know these could have been drafts that were never made available or otherwise used" [Doc. 20 at 23].  This is insufficient.  Rule 901(a), Federal Rules of Evidence, states the proponent of authenticity "must produce evidence sufficient to support a finding that the item is what the

proponent claims it is." FED. R. EVID. 901(a). Evidence that "(A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept" is sufficient to authenticate a document. FED. R. EVID. 901(b)(7).

Defendants have established the authenticity of the Plan, the SPD, and the Plan Prospectus. First, under the terms of ERISA, administrators are required to distribute the type of documents at issue here. See, e.g., 29 U.S.C. § 1021(a) ("The administrator of each employee benefit plan shall cause to be furnished . . . to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan-(1) a summary plan description . . . ."); 29 U.S.C. § 1024(b) ("Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows . . . ."); 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(viii) & (2)(ii) (2009)[19] (requiring a copy of the prospectus to be given to a participant or beneficiary "immediately prior" to their initial investment and upon request). Additionally, administrators are required to file some of these documents with government entities. See, e.g., 29 U.S.C. § 1021(b) ("The administrator shall . . . file with the Secretary-(1) the annual report . . . .; and (2) terminal and supplementary reports . . . ."); 29 U.S.C. § 1024(a)(6) ("The administrator of any employee benefit plan subject to this part shall furnish to

---

[19]The Court uses the 2009 version of this regulation since this is the version that was in effect when the Plan Documents at issue were created.

the Secretary, upon request, any documents relating to the employee benefit plan, including but not limited to, the latest summary plan description (including any summaries of plan changes not contained in the summary plan description), and the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated."); 29 U.S.C. § 1026(a) ("Except as provided in subsection (b) of this section, the contents of the annual reports, statements, and other documents filed with the Secretary pursuant to this part shall be public information and the Secretary shall make any such information and data available for inspection . . . ."); 15 U.S.C. § 77f & j(a) (providing requirements for registration of securities and the information needed in a prospectus).

Here, the 2006 Plan, the SPD as set forth in the Employee Benefits Handbook, and the Plan Prospectus fall into the category of documents that must be distributed and publicly filed, supporting the authenticity of these documents. The SPD even notes that it "constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933" [Doc. 18-5 at 2]. Moreover, the documents contain indicia of authenticity. For example, the Plan Prospectus is stamped with the disclaimer stamp required by the SEC on its cover [Doc. 18-7 at 2], and the 2006 Plan is signed and attested [Doc. 18-4 at 37]. Thus, the authenticity of these documents is not in dispute.

The QIP is the only document that does not fall clearly into one of ERISA's reporting provisions. The QIP is incorporated by reference into the SPD (which in turn, is part of the Plan Prospectus) [Doc. 18-5 at 13, 42]. Defendants assert through

counsel that the QIP booklets "were provided to participants and posted on the Plan's website", but it is unclear whether they were or are available to the public. The Court will not consider the QIP booklets in ruling on Defendants' Motion to Dismiss.

While the Plan, the SPD and the Plan Prospectus can be considered in ruling on Defendants' Motion to Dismiss, the Court agrees with Pruitt's argument that they do not establish that she had actual knowledge of the facts relevant to her breach of fiduciary duty claim. There is nothing in either the Amended Complaint *or* in any of the documents stating that they were provided to Pruitt, or that she obtained knowledge of the facts from another source. As noted above, ERISA does require an employer to provide a copy of the Plan and the Summary Plan Description, and the Plan Prospectus to Plan participants such as Pruitt. Thus, it seems quite likely that she was provided the documents. However, that is not enough to satisfy Defendants' burden of establishing actual knowledge.[20] That the documents (or the relevant facts in the documents) were provided to Pruitt is a necessary predicate to establishing the three-year bar. The Court need not, and does not, explore further what other facts, if any,

---

[20]In Fuller, this Court made the following ruling:
   In light of the comprehensive disclosures in [plan] documents, Plaintiff has been aware of the performance and fees of these funds since at least 2005. The Court agrees that these disclosures are sufficient to give Plaintiff actual knowledge of the essential facts of her claim more than three years prior to filing this suit.
[Fuller, Doc. 59 at 26]. That ruling is at variance with the Court's ruling here. This Court retreats from the referenced ruling in Fuller.

Defendants would need to prove to establish actual knowledge and thus obtain the bar of the three-year statute of limitations.[21]

### 3. Count II Breach of Fiduciary Duty--Decision to Offer STI Classic International Equity Index Fund in 2005

Defendants argue that the Amended Complaint fails to demonstrate that Pruitt has standing to complain of this alleged breach, or any claim involving the STI Classic International Equity Index Fund [Doc. 18-1 at 22 n.78]. Because Pruitt has never been invested in this fund and does not assert how the offering of the fund could have injured her, Defendants' position is correct. See City of L.A. v. Lyons, 461 U.S. 95, 101-02 (1983); Stegall v. Ladner, 394 F. Supp. 2d 358, 363 (D. Mass. 2005); Fuller, Doc. 59 at 19 (dismissing Fuller's prohibited transaction claim as to the STI Classic International Equity Index Fund, finding she lacked standing because Fuller "ha[d] not described how the offering of a fund in which she did not invest caused her a non-speculative injury").

---

[21]Pruitt's argument is, in substance, that "actual knowledge" would also require a showing that she read and understood the documents which provided detailed information concerning the performance of the individual STI Classic Funds, the expenses of each Fund, their expense ratios, and the fact that the advisors to the funds were SunTrust affiliates. The Court need not rule on this contention.

4.   Count VI Prohibited Transaction Claim--Six Year
     Period of Limitations[22]

Defendants argue that Pruitt's prohibited transaction claim[23]
as to seven of the eight STI Classic Funds is barred by ERISA's
six-year repose period [Doc. 18-1 at 21-22] and also by ERISA's
three-year statute of limitations [Id. at 25-26].   In response,
Pruitt merely "incorporate[s] by reference the rebuttal of this

---

[22]Pruitt's prohibited transaction claim is based on "Committee
Defendants' . . . failing to remove or replace the [STI Classic
Investment Funds] as Plan investment vehicles" and "initially
selecting the STI Classic International Equity Index Fund for the
Plan and opening it for Plan investments effective 2005" [Doc. 16
¶¶ 141-42].

[23]This part of the Code defines prohibited transactions.
Section 406(a)(1) of ERISA, or 29 U.S.C. §§ 1106(a)(1), provides:
     (a) Transactions between plan and party in interest[.]
     Except as provided in section 1108 of this title:
          (1) A fiduciary with respect to a plan shall not
     cause the plan to engage in a transaction, if he knows
     or should know that such transaction constitutes a
     direct or indirect--
               (A) sale or exchange, or leasing, of any
     property between the plan and a party in interest;
     . . . .
               (C)  furnishing  of  goods,  services,  or
     facilities between the plan and a party in interest;
     . . . .
Section 406(b) of ERISA, or 29 U.S.C. § 1106(b) provides:
     (b)  Transactions  between  plan  and  fiduciary[.]    A
     fiduciary with respect to a plan shall not--
          (1) deal with the assets of the plan in his own
     interest or for his own account,
          (2) in his individual or in any other capacity act
     in any transaction involving the plan on behalf of a
     party (or represent a party) whose interests are adverse
     to the interests of the plan or the interests of its
     participants or beneficiaries, or
          (3) receive any consideration for his own personal
     account  from  any  party  dealing  with  such  plan  in
     connection with a transaction involving the assets of
     the plan.

argument presented in their brief submitted in <u>Fuller</u>" [Doc. 20 at 28].

The six-year limitation on ERISA actions serves as a statute of repose which bars any action brought after that period of time has run. <u>New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants</u>, 635 F. Supp. 2d 1351, 1378 (N.D. Ga. 2009) (Evans, J.). ERISA's six-year repose period begins to run from the "last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1). The breach or violation occurs when a plan fiduciary causes a prohibited transaction to occur. 29 U.S.C. § 1106(a). The "transactions" referenced in § 1106 are defined in the statute and do not include sales of shares to plan participants. <u>Id.</u>

The Court adopts its reasoning in <u>Fuller</u>:

> The "last action" taken for purposes of the prohibited transaction claim must be more than a failure to remove funds that were improper when selected. The reasoning of the Ninth Circuit Court of Appeals in <u>Wright v. Oregon Metallurgical Corp.</u>, 360 F.3d 1090, 1100-01 (9th Cir. 2004), is persuasive. Relying on the Supreme Court's discussion of Section 406 transactions in <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 893 (1996), the Ninth Circuit concluded that only "commercial bargains," including a sale, exchange, lease or loan, but not a failure to sell stock in a retirement plan, could constitute a transaction sufficient to state a claim for violation of § 1106(a)(1)(D). <u>See also</u> <u>Leber v. Citigroup, Inc.</u>, No. 07 Civ. 9329(SHS), 2010 WL 935442, at *7 (S.D.N.Y. Mar. 16, 2010) (noting that the last action for purpose of § 1106 was selection of affiliated funds); <u>Tibble v. Edison Int'l</u>, 639 F. Supp. 2d 1122, 1125-26 (C.D. Cal. 2009) ("transaction" for purpose of § 1106(a)(1)(D) must be a sale, lease, extension of credit, or like action, not mere failure to act) [<u>aff'd</u>, 2013 U.S. App. Lexis 16050].
>
> Plaintiff asserts in the Amended Complaint that each time plan participants made an investment in one of the STI Classic Funds, a new prohibited transaction occurred. However, the express language of § 1106 prohibits "a fiduciary with respect to a plan" from causing the plan "to engage in a [prohibited]

transaction." 29 U.S.C. § 1106(a)(1). The statute does not contemplate investments by plan participants as prohibited transactions. Accordingly, there is no cause of action under Section 406, 29 U.S.C. § 1106, for participants who invested in the STI Classic Funds.

Plaintiff has not alleged any action taken by the Committee after the initial selection of the funds that would constitute a prohibited transaction. The Court concludes that the "last action taken" for purposes of this claim was the original investment in the named funds and the initial offerings of those funds to plan participants. Although the Court is mindful that "plaintiffs are not required to negate an affirmative defense in their complaint," La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004)(citations and internal punctuation omitted), the date these funds were added to the 401(k) plan is apparent from the face of Plaintiff's Amended Complaint. Bd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. CSX Transp., Inc., 522 F.3d 1190, 1194 (11th Cir. 2008) (citation omitted). Plaintiff's prohibited transaction claim as to any of the STI Classic Funds added to the 401(k) plan prior to April 9, 2004 are, therefore, DISMISSED as time barred.

[Fuller, Doc. 59 at 16-18]. See also David v. Alphin, 704 F.3d 327, 340 (4th Cir. 2013) ("Courts have held that a decision to continue certain investments, or a defendant's failure to act cannot constitute a 'transaction' for purposes of [29 U.S.C. § 1106(a) or (b)]. We agree with this view. The common understanding of the word 'transaction' implies that an affirmative action is required." (citations omitted)); Tibble v. Edison Int'l, 2013 U.S. App. Lexis 16050 (9th Cir. Aug. 1, 2013). This reasoning applies with equal force to Pruitt's prohibited transaction claim. As all of the STI Classic Funds, except the STI Classic International Equity Index Fund, were added to the Plan before April 9, 2004,[24] Pruitt's prohibited transaction claim

---

[24]As noted above Defendants have conceded that 336 days of tolling should be taken into account in determining whether the statute of limitations ran before Fuller was filed on March 11, 2011 (the conceded operative date) [see supra note 1].

is barred with respect to all of the STI Classic Funds, except the STI Classic International Equity Index Fund, by the six year period of limitations. Defendants' argument based on the three year period of limitations is dismissed as moot.

Because the Plan began offering the STI Classic International Equity Index Fund in 2005, and the running of the six year period of limitations was tolled for 336 days, the prohibited transaction claim pertaining to this fund was timely filed when Fuller filed her complaint on March 11, 2011. However, as explained above, Pruitt lacks standing to assert any claims with respect to the STI Classic International Equity Index Fund.

Count VI is due to be dismissed.

### 5.   Derivative Claims

Defendants argue that Pruitt's remaining claims--Counts III, IV, and V--should be dismissed since such claims are derivative of Pruitt's not viable prohibited transaction and prudence claims [Doc. 18-1 at 30]. The Court agrees.

In Count III, Pruitt asserts: Defendants Lanier, Prince, Correll, Chancy, and Gillani breached their ERISA fiduciary duties by failing to remove and prudently monitor Committee Defendants. In Count IV, Pruitt contends that: Defendant SunTrust breached its ERISA fiduciary duties by failing to remove and prudently monitor Defendants Lanier, Prince, Correll, Chancy, and Gillani. Lastly, in Count V, Pruitt submits a claim for "liability for breach of co-fiduciary (liability of SunTrust pursuant to 29 U.S.C. § 1105 as co-fiduciary for participating in, concealing, and failing to remedy Committee Defendants' breaches of fiduciary duty)" [Doc. 16 at 3]. As the language of these claims make clear, they all hinge

on a finding that a breach of fiduciary duty occurred. <u>Lanfear v. Home Depot, Inc.</u>, 718 F. Supp. 2d 1364, 1383 (N.D. Ga. 2010) (Evans, J.) ("A primary breach must exist in order for there to be any liability under ERISA's co-fiduciary provision." (internal quotation marks, alterations, and citations omitted)).     As discussed above, Pruitt has failed to state such a claim, and as a result her derivative claims likewise fail.   <u>Id.</u> ("Since Plaintiffs have failed to state a claim for an underlying breach of fiduciary duty, Plaintiffs likewise fail to state a claim for co-fiduciary liability or knowing participation in a breach of fiduciary duty."), <u>aff'd</u> 679 F.3d 1267, 1286 n.20 (11th Cir. 2012) ("The district court dismissed the three claims in Counts 3, 5, and 6 because they are derivative of the plaintiffs' claims that the defendants breached their duties of prudence and loyalty.  The plaintiffs do not deny that those claims are derivative, and our decision to affirm the dismissal of the primary claims means that the dismissal of those claims is also due to be affirmed.").

IV.   Conclusion

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [Doc. 12] is GRANTED, and Defendants' Motion to Dismiss Amended Complaint [Doc. 18] is GRANTED.     As no unadjudicated claims in this case remain, the Clerk is DIRECTED to enter judgment in Defendants' favor with costs taxed to Plaintiffs.

SO ORDERED, this __7__ day of August, 2013.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

35